Special Master Lynch, to whom the matter was referred, as advised in an earlier opinion (102 N.J. Eq. 100) has found and reported the value of the cemetery turned over to the Union Cemetery Association, as of October 25th, 1912, to be $440,000, to which the association has taken exception, contending, as it did before the master, that the criterion of appraisal of the cemetery should have been farm-land value plus expenditures for cemetery purposes, whereas the master took for his guide the value of the land as a cemetery, including the expenditures, and arrived at the figure upon the evidence of witnesses competent to appraise property of that type. The measure of value adopted is correct, the finding is approved and the reasoning of the master concurred in, that land, when dedicated to the burial of the dead, acquires an unique value by the grace of its consecration and the exclusiveness of the cemetery franchise. *Page 327 
The mortgage under foreclosure was given for the purchase price of the cemetery. The conception of the legal effect of the mortgage as previously expressed is that the mortgage is merely evidence of the vendor's equitable lien upon one-half the proceeds of sales of burial plots, which half, the Cemetery act provides, shall be set aside to pay the purchase price. The mortgage itself speaks the statutory scheme in this respect, in that it stipulates that the lands are to be used for cemetery purposes, to be subdivided into burial lots and plots for sale and to be severally released upon payment of half the sales price. Whatever it may contain of limitations, conditions and forfeitures, in conflict with the Cemetery act, is ultra vires.
A decree for the sum reported by the master will be advised, to be impressed as a lien and to be made out of one-half the proceeds of sales by the cemetery.
In Spear v. Locust Wood Cemetery Co., 72 N.J. Eq. 821,
there was a decree for the mortgage debt to be executed by sale of lands not actually devoted to cemetery purposes. The mortgage had been executed by a prior owner for the purchase price of a tract of land, part of which was conveyed to the cemetery subject to the mortgage, the mortgagee had notice of the intended ultimate use of the land for cemetery purposes at the time he took his mortgage and Vice-Chancellor Leaming held the mortgage to be subject to the Cemetery act only to the extent of exempting from sale the portion dedicated to burial use. The present case is different. Here the mortgage was simply a convenient vehicle in the promotion of the cemetery scheme and for unlawful profit taking and flotation of bonds. The latter illegal features excised, the mortgage is permitted to stand in lieu of the vendor's equitable lien upon the proceeds of sales of burial plots that would have been his by the statute had not the mortgage been made.
The cemetery association has heretofore sold lots and plots for which it has not accounted. One-half the proceeds with interest is presently payable to the mortgagee and for which it is entitled to a decree, to be executed as in Spear v. CemeteryCo., supra. When paid, the amount is to be credited to the lien of the mortgage. An accounting will be ordered. *Page 328 
The master allowed interest on the sum he found to be the value of the cemetery, an error for which an expression of the court, not he, is responsible. There can be no interest because the principal debt is due and payable out of the proceeds of the sales of lots and plots as sales are made and the funds are in hand and improperly withheld. Attorney-General v. LindenCemetery Association, 89 N.J. Eq. 192.
The allowance for promotor's prospective profits is a proper item in determining the purchase-money lien. The master fixed it at $31,975, the price at which the promotor sold $125,000 of bonds given him by the association, as the master considered, in adjustment of the value of his services. The court has heretofore indicated its opinion, that there was a less commendable motive. However, it is not disinclined to accept the master's views that it was in settlement and that the composition was just. Logically, upon this theory, the appraisal should not have been the sales value of the bonds but the ratio that the face value of $125,000 of bonds to the total issue of $1,000,000 bears to the appraised value of the cemetery $440,000 and the $1,000,000 purchase price, viz., $55,000. This percentage (twelve and one-half) approximates that allowed in Attorney-General v.Linden Cemetery, supra.
The allowance of $25,000 for expenses in connection with theLong v. Union Cemetery litigation is disallowed. It is a duplication. It is for legal expense incurred in blazing the way for the cemetery's franchise, and the value of the franchise was a material, if not the primary element in the valuation of the cemetery.
The item of $50,000 for contribution towards the purchase price by the Stuyvesant Development Company is also disallowed. When the cemetery was about to collapse the Stuyvesant company undertook to sell its lots and plots, and to that end the cemetery association conveyed to it the cemetery, or a part of it. The outlay of the Stuyvesant company, if any, was in the performance of its contract and not in the enhancement of the cemetery value. The Stuyvesant company still holds the fee to the cemetery and action should be taken to restore the title. *Page 329 
There is an item of $10,000 expended by the promotor to secure the township, granting the franchise against loss of taxes, which seems to have been overlooked in the argument. If this outlay inured to the advantage of the association, it ought to find expression in the mortgage. Counsel may state their views.
The various exceptions are sustained, modified or overruled as herein indicated.