GRACELAND PARK CEMETERY COMPANY, A CORPORATION, APPELLEE, V. CITY OF OMAHA, A MUNICIPAL CORPORATION, APPELLANT.

114 N. W. 2d 29

Filed March 30, 1962. No. 35172.

*Herbert M. Fitle, Bernard E. Vinardi, Irving B. Ep-*

*stein, Frederick A. Brown, Edward M. Stein, Steven J. Lustgarten,* and *Sebastian J. Todero,* for appellant.

*Wells, Martin, Lane, Baird & Pedersen,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

This is an appeal by the City of Omaha from a judgment awarding damages to the Graceland Park Cemetery Company for a taking and damaging of its property in a condemnation proceeding under the power of eminent domain.

The plaintiff is a private corporation owning and operating a cemetery in Omaha. It issued 367 shares of stock of which Duane Beavers, the treasurer of the company and the superintendent of the cemetery, is the owner of 254 shares. The cemetery contains 30 acres of land which was purchased in 1910. It is located in the city of Omaha, the legal description of which is stated in the petition. For the purpose of this opinion we describe it as being bounded on the east by Forty-second Street, on the north by L Street, on the south by Hitchcock Park, and on the west by a residential area. The evidence shows that room for the expansion of its acreage does not exist. The cemetery was fenced on the east and north with a 5-foot, chain-link, steel fence constructed on the property lines.

In connection with the development of a new interstate highway the city determined that it was necessary to widen the intersection of Forty-second and L Streets, and the approaches thereto. Condemnation proceedings were commenced on June 24, 1959, to acquire certain lands and a grading easement over other lands. The land taken is generally described as follows: Commencing at the northeast corner of the cemetery a wedge-shaped tract extending 813.15 feet west, approximately 19 feet wide at the east end and decreasing to zero at

the west end. A similar tract with approximately the same width and length was taken along Forty-second Street. The northeast corner was rounded off, resulting in the taking of more ground than the extended lines above described would indicate. The total amount of land taken is 14,760 square feet, slightly in excess of one-third of an acre. In addition to the above, a grading easement over 9,800 square feet of ground was taken over the adjoining cemetery property. In view of the fact that there is no evidence of damage resulting from the easement, we shall not describe the easement boundaries. It is stipulated in the record that there are no severance damages. The only question for determination is the value of the land taken, the value of trees, shrubs, and flowers removed, and the cost of relocating the fence. The jury awarded damages to the plaintiff in the amount of $28,125. It is from a judgment for this amount that the city has appealed.

The evidence shows that there have been approximately 7,800 interments in the cemetery since 1913 which occupy about 20 acres of its total area. The land taken by the city lies in the unused portion. A general plan for laying out of roads, walkways, and lots was engineered shortly after it was acquired for cemetery purposes. The land taken adjoins an area which has never been surveyed and staked out on the ground. The evidence is that a cemetery is developed a portion at a time as needed for burial purposes and that the land taken adjoins an area not yet needed for that purpose. The record is silent as to the extent of the development of this area from which the land was taken. There is no evidence that water lines have been laid, or that the land is sodded, or otherwise developed. There is evidence that the land taken was occupied by trees, bushes, and flowers, and of the damage resulting from their removal. There is evidence of the reasonable cost of moving the fence to the new property lines.

The property generally was improved as a modern

park-like cemetery in which the traditional headstones are supplanted with markers set at ground level. The 30-acre tract is a compact area put to permanent use as a cemetery. It is the general rule that in determining the fair and reasonable value of land taken under the power of eminent domain it is proper for the jury to consider the purposes for which it was being used at the time of the taking, all uses for which it is adapted and to which it might be put, and award compensation upon the basis of its most advantageous and best use. Sump v. Omaha Public Power Dist., 168 Neb. 120, 95 N. W. 2d 209. The evidence in the instant case shows that the most advantageous and best use to which the property can be put is for cemetery purposes. The measure of damage must therefore be determined upon its use for that purpose.

Recognition of the unique value of cemetery property has been noted by the courts. In Fidelity Union Trust Co. v. Union Cemetery Assn., 104 N. J. Eq. 326, 145 A. 537, the court said that land, "when dedicated to the burial of the dead, acquires an unique value by the grace of its consecration and the exclusiveness of the cemetery franchise."

There are types of property that are not bought and sold on an open market and consequently do not have a reasonable market value within the rule that the fair market value is the price which property will bring when offered by a willing seller to a willing buyer, neither being obligated to buy or sell. The fair market value of property implies proof of sales of similar property in the community as a means of fixing the value of the property taken. When the property is such that evidence of fair market value is not obtainable, necessarily some other formula for fixing the fair value of the property must be devised. This is true, as we view it, of such properties as school yards, church yards, college campuses, buildings under construction, and cemeteries. 1 Orgel on Valuation under Eminent Domain, § 38,

p. 175. We hold, therefore, that in the taking of land used for cemetery purposes the measure of damages is not the fair market value of the land for the simple reason that such property has no fair market value. Whenever the property is of such character and nature that it has no fair market value in the ordinary sense, its value for the uses and purposes to which it is being devoted and to which it is peculiarly adaptable may be shown. Idaho-Western Ry. Co. v. Columbia Conference of Evangelical Lutheran Augustana Synod, 20 Idaho 568, 119 P. 60, 38 L. R. A. N. S. 497; City of Chicago v. Farwell, 286 Ill. 415, 121 N. E. 795. One text writer refers to the measure of damages in such a case as the determination of the specialty value to the owner. ' Jahr, Eminent Domain, Valuation and Procedure, § 82, p. 116.

An appropriate method for finding the value of land taken, which was being used for cemetery purposes, is to determine the value of the burial lots or grave sites taken by applying a unit value based on the average sales price per lot or grave site in the adjoining used section of the cemetery, less the reasonable cost of development, sales, maintenance, administration, perpetual care, and any other expense affecting its value. The unit value thus determined, multiplied by the number of lots or grave sites taken, less a reduction to present worth for the deferred realization over the selling period, will constitute a guide to the jury in determining the value of the property taken. St. Agnes Cemetery v. State, 3 N. Y. 2d 37, 143 N. E. 2d 377, 62 A. L. R. 2d 1161. We approve this formula as a proper guide for the jury to consider in fixing the value of land taken from a cemetery such as we have before us. We point out that a capitalization of anticipated profits is not a proper method of fixing the value of property. Whether anticipated profits would actually be made ordinarily depends on so many contingencies that a verdict cannot be grounded on them. Experience teaches us that future paper profits are more often illusory than real.

Hamilton v. Pittsburg, B. & L. E. R.R. Co., 190 Pa. 51, 42 A. 369, 61 L. R. A. 319. Values based on current profits have a dependable foundation, while anticipated profits do not. We are of the opinion, however, that the evidence of the fair and reasonable sale price of cemetery lots or grave sites, less the deductions hereinbefore set out, when such sales can reasonably be projected over a term of years with the net sale price reduced to present worth, is not so uncertain as to bring it within the exclusionary rule. The ordinary uncertainties of the market place do not exist in such a case and the net sale price of the lots or grave sites, reduced to present worth, afford a reasonable guide for fixing the value of lands taken by condemnation. United States v. Iriarte, 166 F. 2d 800; Cementerio Buxeda, Inc. v. People of Puerto Rico, 196 F. 2d 177. It is somewhat comparable, because of the nature of the fixed income, to rental value which is always admissible because it is almost as certain as the market value of the property.

The cemetery company relies upon the evidence of Duane Beavers and Frank J. Priborsky to establish the value of the land taken. Beavers testified that each lot is 14 feet by 9 feet and contains 4 grave sites, each 9 feet by 3½ feet. The walkways shown on the original plat are 3 feet in width. He fixes the sale price of each grave site at $125. He stated that 538 grave sites were taken. He fixed the value of the grave sites taken at $67,250. He arrived at this amount by valuing the 538 grave sites at $125 each. Beavers stated that the cost of operation of the cemetery is approximately $20,000 per year and that the interest from the perpetual care fund is about $1,400. The difference of $18,600 is taken from the sale price of lots. In the year preceding the condemnation the sale of grave sites failed by $4,000 to pay operating expenses. He estimated that a minimum of 160 grave sites had to be sold to cover the expense of operation and that he had no idea as to the number actually sold. On cross-examination he admitted that

the 14,760 square feet taken would provide space for no more than 472 grave sites without taking into consideration the walkways shown on the original plat. He testified that 50¢ per square foot on all grave sites sold is set aside for the perpetual care fund, which amounts to $15.75 per grave site. There is no evidence of other deductions required to be made from the reasonable sale price in order to make use of the unit method in determining the value of the land taken.

The witness Priborsky is the assistant manager of Forest Lawn Cemetery in Omaha, a cemetery containing 359 acres. He fixed the value of the land taken at $62,500. This amount is calculated on 500 grave sites at a sale price of $125 each. He testified that sales expense usually runs 40 percent of the sale price, that perpetual care requires 25 percent, that depreciation of equipment runs 10 percent, and that there will be some development and other costs. He estimated that 75 percent of the sale price of grave sites is not attributable to the lot itself. Assuming the existence of 500 grave sites taken by the condemnation, he testified that $17,500 only would be attributable to the grave sites. He did not consider the land set aside for walkways, or a buffer area along the fences, which he stated are usually 4 or 5 feet wide. He did not consider the present value calculated for the period of time necessary to sell the grave sites.

The city called three experienced realtors as expert witnesses, none of whom had sold a cemetery property or knew of any sales of such. Their estimates of value were based largely on the value of residential property in the area. One estimated the value of the whole cemetery at $104,000 and the value of the property taken at $1,200. He fixed the damage to trees, shrubs, and flowers at $1,500 and the cost of replacing the fence at $2,100. He estimated that there were 300 grave sites taken which had a sale price of $125 each. He admitted this would produce a gross amount of $37,500. He did

not testify to any deductions to be made to determine the unit price to be applied to properly determine the value of the grave sites actually taken.

The second expert called by the city fixed the value of the cemetery at $80,000 and the land taken at $5,904. He fixed the cost of moving the fence at $2,046 and the damage to trees, shrubs, and flowers at $1,150.

The third expert fixed the value of the land taken at $11,273. He said that 73 percent of the land in a cemetery is ordinarily all that is usable for grave sites. He estimated the land taken would provide 300 grave sites which would sell for $125 each and that it would take 10 years to dispose of them. He concluded that the cemetery would produce an income of $1,605 per year for 10 years which, reduced to present value, would fix a value of $11,273. While some of the foregoing evidence was stricken by the trial court, we think it was proper evidence when the unit theory is employed to fix the value of property taken by condemnation.

The cemetery company, as the owner of the land taken, had the burden of establishing its value in the condemnation proceedings. Platte Valley Public Power & Irr. Dist. v. Armstrong, 159 Neb. 609, 68 N. W. 2d 200. We conclude, under the evidence shown, that the most advantageous and best use of the property taken was for cemetery purposes. We hold also that the 30 acres devoted to cemetery purposes had no fair market value as that term is ordinarily used and that the trial court was in error in submitting the fair and reasonable market value as the measure of damages. We conclude, also, that it is proper to submit the net unit sale price as a proper guide for the jury in fixing the value of the property taken.

As to the sufficiency of the evidence to sustain the verdict, we point out that the evidence is uncertain as to the number of grave sites taken. The number varies from 300 to 538 when no reason exists why the actual number taken could not be fixed with reasonable cer-

tainty. We point out also that the number of grave sites taken, multiplied by the sale price of a single grave site, affords no reasonable basis for fixing the value of the land taken. United States v. Iriarte, *supra*. The unit price to be used in making such a determination must be the fair sale price, less all deductions necessary to arrive at its net value. The amount fixed by the use of the unit price thus arrived at should be reduced to its present worth. No attempt was made to establish the net unit price and, consequently, the plaintiff did not produce evidence from which a jury could arrive at a fair value of the land taken. The evidence adduced by plaintiff left the jury where it could arrive at a verdict only by speculation and conjecture. A verdict arrived at in this manner cannot stand.

It is true that the plaintiff may rely upon evidence offered by the defendant to support a verdict if it is sufficient. But there is no evidence by the defendant in the record that will support a verdict for $28,125. We necessarily conclude that the verdict is not sustained by the evidence and that the judgment should be reversed and the cause remanded for a new trial.

The defendant tendered an instruction which substantially complied with the rule to be applied in fixing the value of land taken by condemnation under the unit sale price rule. The instruction was refused. It should have been given in substance, and the court erred in failing to do so.

The record is barren of any evidence as to the value of the grading easement. We think the trial court erred in submitting the issue of damages resulting from the taking of the easement, other than to direct the assessment of nominal damages.

In view of the conclusion reached, we will not discuss other assigned errors. The judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.

SIMMONS, C. J., participating on briefs.