439 P.2d 828

Maurice GRANT and Big Ben Realty Company, Inc., an Arizona corporation, Appellants,

v.

Lewis C. WHITE and Edith White, husband and wife, Appellees.

No. 8507.

Supreme Court of Arizona, In Banc.

April 17, 1968.

Mariscal, Goss, Green & Corbet, by Harry T. Goss, Phoenix, for appellants.

Ryley, Carlock & Ralston, by William C. Taylor, Phoenix, for appellees.

McFARLAND, Chief Justice:

This case is before us on an appeal from a judgment of the superior court in favor of defendant-appellant. Affirmed.

Maurice Grant and Big Ben Realty, Inc., hereinafter referred to as the brokers, sued Lewis and Edith White, hereinafter referred to as sellers, for a real-estate

commission on the sale of a large parcel of sellers' property. Most of the disputed facts were resolved by the findings of fact made by the trial court. These findings were amply supported by the evidence, and so are binding on us. Barnett v. Hitching Post Lodge, 101 Ariz. 488, 421 P.2d 507.

The brokers received from the sellers a written listing of the property, agreeing to pay a ten per cent commission. Brokers produced a prospect named Bechanstin who made an offer, coupled with $10,000 earnest money, at a price twenty-five per cent below that specified in the listing. After some negotiations, buyer and sellers came to an agreement which was evidenced by escrow instructions dated March 1, 1957, deposited with Phoenix Title and Trust Co. These instructions were signed by the buyer and sellers, and were approved for the brokers by Maurice Grant. They were long and involved, and included a provision that the commission should be paid as follows:

(a) One-half ($23,100) at close of escrow;

(b) One-fourth ($11,550) after one year; and

(c) One-fourth ($11,550) after two years.

Sellers were to convey title to all of the property to Phoenix Title & Trust Co., as trustee, with provisions for partial releases as payments were received from the buyer, who was to pay into escrow (including the $10,000 earnest money) $138,000 by June 1, 1957.

The buyer was unable or unwilling to make the required additional payment of $128,000 on June 1. The agreement gave him the right to nominate another person as purchaser. He nominated a corporation known as Phoenix-Hartford Investment Co., with himself as principal stockholder, and with Ben Schleifer of Big Ben Realty Co. as a stockholder in the amount of his half of plaintiffs' commissions, which were assigned to the buyer to help make the required down payment. It was still necessary to get defendants to agree to accept a smaller down payment, or the deal would fall through. Defendants offered to accept $20,000 less for the down payment, provided that plaintiffs would take one-half of their commission out of payments received by the seller subsequent to the down payment, and would agree that in the event of a forfeiture by defendants because of nonpayment of the buyer, any commission still due would cease to be a liability of defendants. Plaintiffs signed a written amendment to the escrow instructions to that effect, and defendants agreed to accept and did accept a down payment of only $118,000 instead of the previously agreed $138,000.

The sellers paid the brokers the one-half of the commission as agreed, but later forfeited the sale contract because of the buyer's failure to continue the payments. This suit, by the brokers, is for the second half of the commission.

Seller Lewis White says that it was understood the commission would be payable only if the buyer kept up his payments during the first two years. We first consider the question as to whether the last agreement in regard to the real-estate commission is valid.

The main argument of the brokers in the instant case is: Since the commission was absolutely earned and payable when the escrow was signed, and since the commission could not be lost by a subsequent failure of the buyer to perform, there was no consideration for a subsequent written promise to make the payment of one-half the commission contingent upon future payments by the buyer. This argument ignores some of the most elementary rules of consideration. The brokers contend that there was no financial gain or any benefit running from sellers to the broker Grant. There is nothing in the law to the effect that consideration is based only on a benefit to the promisor. Consideration may be entirely without benefit, if there is a detriment to the promisee. Cavanaugh v. Kelly, 80 Ariz. 361, 297 P.2d 1102. In the instant case, sellers agreed to accept a smaller down payment—a definite detriment—in return for the brokers' agreement to make part of

their commission contingent on the buyer's future performance.

Even the argument that there was no benefit to the brokers is without foundation. One of them was a stockholder in the corporation nominated by the buyer to take title. The sellers, by refusing to reduce the down payment requirement, could have prevented the sale altogether. If the sale to the corporation was an advantageous one from the corporation's point of view—as it must have appeared to be, or the corporation would not be buying the property—at least one of the brokers stood to enhance the value of his stock in the corporation.

Broker Grant is a lawyer with twenty-four years experience as a member of the Ohio bar. He testified that he signed the agreement because if he had not, sellers would not have agreed to a reduced down payment, and the sale would not have been consummated. His testimony was:

"Q. Now why did you execute that particular document?

"A. Well, Mr. White insisted that I execute them, otherwise there wouldn't be any transaction."

Mr. Schleifer, of Big Ben Realty Co., co-plaintiff, testified:

"Q. Yes. In other words, it was to your interest as seller by reason of the commission, but it was also to your interest to see the deal go through because of your interest in the big corporation [Phoenix-Hartford Investment Co.], is that not true?

"A. Right."

In short, conceding for the purpose of this argument, that plaintiffs had earned their commission and could not be deprived of it by the buyer's failure to perform, then when the sellers said that they would refuse to accept a reduction in the down payment plaintiffs could have replied: "That is immaterial to us. You must pay our commission anyway." Instead, they said: "If you will accept a smaller down payment, and consummate the sale, we will accept part of our commission now, and will agree that the remainder shall be contingent upon the buyer's performance." This was not only the agreement, but also it was reduced to writing, signed by both plaintiffs, and fully executed by the sellers. It was a simple accord and satisfaction, and it completely discharged the original commission agreement. See Restatement of Contracts, Vol. II, Section 417, which states:

"The following rules are applicable to a contract to accept in the future, a stated performance in satisfaction of an existing contractual duty * * * (b) If such contract is performed, the previously existing duty is discharged."

Plaintiffs also complain that the trial court refused to make additional findings of fact when requested to do so by plaintiffs. The requested findings were:

"No finding is made regarding the fact that the plaintiffs herein were the procuring cause of the sale. * * *;

"No finding is made as to whether or not the escrow instructions in the original form dated March 1 were or were not a contract between buyer and seller, or if not, why not;

"No finding is made regarding the ambiguity between the provisions for the payment of the real estate commission contained in exhibit 2 infra, and the subsequent amendments to the escrow and the trust instruments;

"In particular as to the effective dates or date of the provisions relating to the commission of each of such instructions;

"There is further no finding as to whether or not the trust is or is not terminated and if not terminated, the effect as to plaintiff's claim herein."

We do not discuss this assignment of error because even though all of these findings were made and were favorable to plaintiffs, it would not affect the reason for our decision, which is that there was an executed accord and satisfaction in writing, for an adequate consideration.

Judgment affirmed.

UDALL, V. C. J., and STRUCKMEYER, BERNSTEIN and LOCKWOOD, JJ., concur.