445 P.2d 169

**PHOENIX TITLE & TRUST COMPANY, an Arizona corporation, as Trustee, Appellant,**

v.

**ARIZONA PUBLIC SERVICE COMPANY, a corporation, Appellee.**

**No. I CA–CIV 600.**

Court of Appeals of Arizona.

Sept. 9, 1968.

Rehearing Denied Oct. 29, 1968.

Review Denied Dec. 3, 1968.

Lester J. Hayt and Leven B. Ferrin, Phoenix, for appellant.

Snell & Wilmer, by Thomas E. Parrish and Mark Wilmer, Phoenix, for appellee.

CAMERON, Chief Judge.

This is a suit by Arizona Public Service Company, a corporation, against Phoenix Title and Trust Company, an Arizona corporation, as trustee for the Progressive In-

vestment Company to condemn land for an easement.

Judgment and verdict was for Phoenix Title in the amount of $20,000 for the easement and $80,000 for severance damages. From an order granting Arizona Public Service Company's motion for new trial defendant appeals.

We are called upon to determine:

I. The scope of the appeal.

II. The correctness of the instruction regarding damages.

III. Whether the verdict was excessive.

Arizona Public Service commenced this action against a number of landowners, including defendant as trustee, to condemn properties for the erection and maintenance of high voltage transmission lines. Arizona Public Service sought from the defendant an easement across the middle of defendant's 73.11 acres.

Defendant entered into a stipulation with Arizona Public Service whereby Phoenix Title was entitled to a separate trial on the sole issue of compensation and Arizona Public Service was "granted the right of immediate entry and possession of the portion of these defendants' premises which are by this action, condemned".

Presumably Arizona Public Service took possession as per their amended complaint, to wit:

"Plaintiff seeks the right to enter upon the above-described property and to erect thereon electric transmission lines, including supporting structures together with the right to extend transmission lines over and upon the above described property, to inspect, service, maintain, repair, replace or remove said lines and supporting structures from said property, to install and maintain guys and other facilities where deemed feasible by plaintiff, to trim and remove any trees or shrubs which may exist and which in the judgment of plaintiff may interfere with the construction of or endanger the operation of said facilities to the pub-

lic, and to permit the attachment of other lines to said supporting structures."

Immediately thereafter Arizona Public Service proceeded to construct a 230KV (230,000 volt) electric transmission line across defendant's property. The defendant's 73.11 acres are located on the southside of Baseline Road west of 48th Street in Maricopa County with one of its long sides parallel to and partially fronting on Baseline Road. The land is unplatted and undeveloped desert property.

At the trial before a jury Arizona Public Service's appraisal witness testified that the market value of the entire tract prior to the taking of the easement was $400,000 and the market value of the entire tract after the taking was $386,500. The appraiser testified that the market value of the easement taken was $14,500 and the severance damages were zero.

The defendant's appraisal witness, a real estate broker and owner of 20% of the stock of Progressive Investment Company which was beneficiary of the trust, testified that the market value of the entire tract prior to the taking of the easement was $800,000; the market value of the entire tract after the taking was $400,000; the market value of the easement taken was $50,000; and the severance damages were $350,000, or a total of $400,000. Thus, there was then a difference of $385,500 between the two witnesses. These were the only two witnesses to testify as to the value, one of whom (defendant's witness) had a direct financial interest in the outcome of the lawsuit. The jury returned a verdict for the defendant in the amount of $20,000 damages for the easement and $80,000 for severance damages, or a total of $100,000.

## I. THE SCOPE OF THE APPEAL.

Arizona Public Service moved for a new trial which contained some eight different allegations of error as a basis for said motion including the allegation that the court erred in giving defendant's requested instruction No. 5, that the jury's award for

the taking and severance damage was excessive and that the said award was not justified by the evidence and was contrary to law. The order of the court granting the motion of Arizona Public Service read as follows:

"IT IS ORDERED AND ADJUDGED that the Motion to vacate the Verdict and to Grant the Plaintiff a New Trial be, and the same is hereby granted on the grounds that the Court erred in its charge to the jury by giving Defendants' Requested Instruction Number Five (5) over the objection of the Plaintiff and that the jury's award for the taking and severance damage was excessive, and said award was not jusified (sic) by the evidence and is contrary to law."

The scope of the review permitted this Court where a new trial has been granted is limited by the order granting the new trial. Our Supreme Court has stated:

" * * * We have held many times that review of an order granting a new trial is restricted to grounds on which the motion for new trial was granted, and the order cannot be supported by other grounds. (citations omitted)

* * * * * *

"In examining the trial court's order that 'the judgment was not justified by the evidence' it is immediately apparent that the court did not specify in any detail wherein there was a lack of evidence from which the jury could infer negligence. We recently commented on this general type of order in Yoo Thun Lim v. Crespin [100 Ariz. 80, 411 P.2d 809], supra, stating that in this situation 'we will presume that the verdict of the jury was correct, placing the burden upon the appellee to convince us that the trial court did not err in ordering a new trial.' We are not convinced that the verdict of the jury was incorrect." Rogers v. Mountain States Telephone & Telegraph Co., 100 Ariz. 154, 163, 164, 412 P.2d 272, 278 (1966). See also Yoo Thun Lim v. Crespin, 100 Ariz.

80, 83, 411 P.2d 809 (1966), Montalvo v. Hartford Fire Insurance Company, 5 Ariz.App. 419, 427 P.2d 553 (1967).

In other words, as we read Rogers v. Mountain States Telephone & Telegraph Co., op. cit., and Yoo Thun Lim v. Crespin, supra, unless the trial court specifies in detail the reason for granting the motion this Court must presume on appeal that the verdict of the jury was correct and that the trial court erred in ordering a new trial. This presumption may be overcome in the appellate court by the appellee convincing us that the trial court did not in fact err.

Applying this rule to the facts in this case the order granting a new trial on the ground that the award was not justified by the evidence and is contrary to law, this being a general rather than a detailed statement, we presume the verdict of the jury was correct and the trial court was in error in granting the motion for a new trial based upon this reason. A review of the briefs and the transcripts does not persuade us that the appellee, Arizona Public Service, has overcome this presumption of error on the part of the court and the jury verdict, except as hereinafter noted, is justified by the evidence and is not contrary to law.

The order also recites that the verdict was excessive, the court evidently rejecting the request for remittitur. Does the statement in the order that the "jury's award for the taking and severance damage was excessive" state with specificity the reason for the order as required by *Rogers* and *Yoo Thun Lim*, supra? We believe that it does. That an award was excessive can be apparent to the trial court without the trial court being able to state by what amount it was excessive. We therefore hold that the question of the excessiveness of the verdict is properly raised by the order and we may consider the matter on appeal.

Likewise, the order regarding the giving of the instruction No. 5 specifies

with sufficient detail and complies with *Rogers* and *Yoo Thun Lim,* supra.

## II. WAS DEFENDANT'S REQUESTED INSTRUCTION NO. 5 PROPER?

A portion of the instructions concerning the property taken for the easement reads as follows with defendant's requested instruction No. 5 underlined:

"You are further instructed that the property the plaintiff seeks to receive in this action is known as an easement as opposed to total ownership of the land in question.

"An easement is a right which one person has to use the land of another for a specific purpose. Defendants, will, therefore, retain the ownership of the land located within the easement obtained by Arizona Public Service Company, subject only to the specifically defined rights of Arizona Public Service Company to use the land within the right of way.

"You are further instructed that the Arizona Public Service Company, when it took the property rights for the power line, took it unconditionally, and must make full compensation for what it took.

"*Arizona Public Service Company must pay the fair market value for the entire right appropriated, even though full use may not be immediately contemplated or never taken. The presumption is that the Arizona Public Service Company will exercise his full right and use and enjoy the property to the full extent.*"

Arizona Public Service Company urges that this instruction is prohibited by two Arizona cases, State ex rel. Morrison v. Thelberg, 87 Ariz. 318, 350 P.2d 988 (1960) and Pima County v. Bilby, 87 Ariz. 366, 351 P.2d 647 (1960), wherein the Supreme Court of Arizona stated that in an action to condemn a new right-of-way, damages are confined to the proposed use and the jury is not permitted to speculate on the damages that may result from presently uncontemplated future changes in use.

Our Supreme Court said in *Thelberg,* supra:

"* * * We therefore overrule the principle laid down in In re Forsstrom [44 Ariz. 472, 38 P.2d 878] and Grande v. Casson, [50 Ariz. 397, 72 P.2d 676], supra, which declared the noncompensability of an abutting property owner for the destruction or substantial impairment of his right of access to such highway. We also reject the reasoning upon which the rule rests i. e., that there is a presumption of payment. The rule to the contrary, supported by the weight of authority, is based upon the fact that an abutting property owner to a highway has an easement of ingress and egress to and from his property which constitutes a property right. Our State Constitution, Art. 2 § 17, A.R.S., prohibits the taking or damaging of private property for public use without just compensation. It follows that the State can neither take nor damage said easement of ingress or egress of an abutting property owner without just compensation." State v. Thelberg, supra, 87 Ariz. page 324, 350 P.2d page 991.

This is no doubt a correct statement of the law, but by its own language is limited to future changes in use. Nichols, On Eminent Domain, § 9.21, page 281, explains the rule by saying that often after an easement has been taken a change or an increase in the necessities and requirements of the use of the public makes an altered or increased use of the land desirable:

"In such case if the new use to which it is desired to devote the land is of the same character as the use for which it was taken and merely amounts to the advancement of the original purpose, * * * the new use is only an exercise of the easement which has been taken in the first place, and the owner of the fee has no grounds for complaint * * all these damages were paid for when the easement was taken * * *."

. But when the change in use of a different character than that for which the land was originally taken it amounts to an imposition of a new and additional burden upon the land and not merely an exercise of the existing easement. When this is the case the rights of the owners are just the same as if no easement existed as to the changed use and before the changed use can be effectuated the owner is entitled to just compensation for the additional servitude. Nichols, supra, pages 281–282.

We believe that *Thelberg* and *Bilby*, supra, can be distinguished from the case presently before the Court. In *Thelberg* and *Bilby*, supra, the State was attempting to materially increase the burden upon the servient estate and impose thereon a new and additional burden. In the instant case although the plaintiff, Arizona Public Service Company in the briefs before this Court and in statements in the court below, indicated they did not intend to use the easement for anything more than a 230,-000 volt line, we do not believe that they can by this declaration under the facts in this case limit the damages they are to pay for the taking of the easement. It is immaterial to the defendant or to future purchasers of the property whether the high voltage line carries 230,000 volts or 250,000 volts or even more. Although the testimony indicates that for a higher voltage line different and higher towers (metal) and a greater space would be needed this would go to the size of the easement and not to the extent of the use of the easement.

■ In arriving at a rule to be applied in this case we hold that a jury may properly be instructed that the condemnor, in the absence of an agreement otherwise, must pay the fair market value for all of the right condemned:

"The damages occasioned by the taking are estimated as of the time of the taking. In the absence of agreement between the parties, the condemnor must take the rights which he seeks to appropriate absolutely and unconditionally, and he must make full compensation for what he takes. * * * When property is acquired by virtue of the power of eminent domain, the compensation of the owner is to be estimated by the actual legal rights acquired by the condemnor and not by the use that he may make of the right." State ex rel. Polson Logging Co. v. Superior Court, 11 Wash.2d 545, 119 P.2d 694 (1941).

See also Little et al. v. Loup River Public Power District, 150 Neb. 864, 36 N.W.2d 261, 7 A.L.R.2d 355 (1949) and Coos Bay Logging Company v. Barclay, 159 Or. 272, 79 P.2d 672 (1938). To hold otherwise would place the company and the landowner eternally in the courtroom. United States v. 9.94 Acres of Land, (D.C.S.C.), 51 F.Supp. 478 (1943).

■ Arizona Public Service further contends that instruction No. 5 was erroneous because it was contrary to the stipulation made between the parties at the time Arizona Public Service was allowed to construct the power line across defendant's property. The stipulation reads in part as follows:

"All the issues except the question of the amount of compensation to which these defendants are entitled shall be deemed decided in favor of the plaintiff Arizona Public Service Company."

We do not believe that this stipulation is contrary to the instructions given as the instructions given went directly to the damages and instructed the jury on what they might base the damages.

■ Arizona Public Service further contends that instruction No. 5 was erroneous because it repudiated Arizona Public Service's attempt to unilaterally stipulate as to the rights taken. There is ample authority throughout the United States that a condemnor may unilaterally stipulate to limit the condemnation rights. A 1958 Washington case has stated:

"Our decisions have recognized the right of the condemnor to stipulate in mitigation of damages. Tacoma Eastern R. Co.

v. Smithgall, 1910, 58 Wash. 445, 451, 108 P. 1091, 1094, held that: ' * * * Cases will often arise when an unanticipated claim for damages interposed by the landowner may be lessened or entirely obviated by a stipulation or waiver on the part of the condemning party. The law does not favor the taking or damaging of property for a public use beyond the necessities of the case, and if damages may be avoided by the waiver or stipulation definite and certain in its terms, which will fully protect the rights of all parties concerned, there is no reason why such stipulation should not be received and acted upon.' * * * Such 'stipulations' are unilateral; they are a means by which the taking or damaging of private property can be kept to a necessary minimum in condemnation proceedings. Acceptance of the property owner's contention would, in effect, make such stipulations in mitigation of damages unavailable. Neither policy nor precedent warrants such a result." State v. Basin Development and Sales Co., 53 Wash.2d 201, 332 P.2d 245, 248 (1958).

We do not believe, however, that either the stipulation entered into or the attempted unilateral stipulation applies to the facts in the instant case. By the complaint, by the testimony, it is clear that the plaintiff, Arizona Public Service, has taken the geographic area described as an easement for its power line and that it is a complete taking for that purpose—the purpose of constructing power lines across defendant's property and we believe that the instruction No. 5 was correct.

III. WAS THE VERDICT EXCESSIVE?

■ The verdict was in two parts. Part one awarded the defendant $20,000 for the use actually taken. As noted before there were only two witnesses who testified as to the value of the easement taken. The expert for Arizona Public Service Company testified that the value was $14,500. The witness for the defendant testified that the value of the easement taken was $50,000. Our Supreme Court has stated:

"While it is true that the granting of a new trial is to a great extent discretionary with the trial court, such discretion, although broad, is legal and not arbitrary and must be exercised according to reason and law. Kotsonaros v. State of Minn[esota], 79 Ariz. 368, 290 P.2d 478; City of Phoenix v. Harlan, supra [75 Ariz. 290, 255 P.2d 609]; Zevon v. Tennebaum, 73 Ariz. 281, 240 P.2d 548. The trial judge must of course have wide discretion because of his intimate relation to the trial and primary justice. This does not mean, however, that this court should abandon all supervision and fail to impose the limitation of legal standards on the exercise of trial court judicial discretion. Thus, where the probative force of the evidence clearly demonstrates that the verdict of the jury is correct, the trial judge exceeds the bounds of judicial discretion in granting a new trial and it is the duty of this court to reverse the action. (citations omitted)." State ex rel. Morrison v. McMinn, 88 Ariz. 261, 262, 355 P.2d 900 (1960).

We have examined the record and considering the testimony of the appraiser for Arizona Public Service that the easement was worth $14,500 and the testimony of the witness for the defendant that the easement was worth $50,000, we feel that the "probative force of the evidence clearly demonstrates that the verdict of the jury" was correct. Under the circumstances in this case after a careful examination of the record, we conclude that it was an abuse of discretion for the trial judge to grant a new trial as to the verdict of $20,000 for the use taken.

■ The amount of $80,000 for severance damages is a different matter, and after reviewing the transcript we cannot say the trial court abused its discretion in granting a new trial as to the amount of $80,000 for severance damages. Caldwell

v. Tremper, 90 Ariz. 241, 367 P.2d 266 (1961).

It is true that the witness for Arizona Public Service may have invited the result by asserting that there were no severance damages when a reading of the transcript indicates that there were in fact severance damages. Still a reading of the record in this matter does not persuade us that the trial court abused its discretion in granting the motion for new trial as to the excessiveness of the $80,000 for severance damages.

The order of the trial court granting new trial as to severance damages ($80,000) is affirmed. The order as it relates to the verdict for easement taken ($20,000) and defendant's instruction No. 5 is set aside. The matter is remanded with instructions to enter judgment in the amount of $20,000 for the easement and to grant a new trial on the issue of severance damages.

DONOFRIO and STEVENS, JJ., concur.