445 P.2d 186

STATE of Arizona ex rel. Justin HERMAN, Director, Arizona Highway Department, Appellant,

v.

SOUTHERN PACIFIC COMPANY, Appellee.

No. I CA–CIV 690.

Court of Appeals of Arizona.

Sept. 10, 1968.

Rehearing Denied Oct. 11, 1968.

Review Denied Dec. 3, 1968.

Gary K. Nelson, Atty. Gen., Darrell F. Smith, Former Atty. Gen., by Stanley Z. Goodfarb, Sp. Asst. Atty. Gen., for appellant.

Lawrence L. Howe, San Francisco, Cal., Evans, Kitchel & Jenckes, by Ralph J. Lester, Phoenix, for appellee.

DONOFRIO, Judge.

This is an appeal by the State of Arizona from a judgment in favor of Southern Pacific Company in the sum of $21,000 on an action by the State to condemn the right of access to a public highway.

On October 28, 1964 the State of Arizona filed an action in Yuma County to control the access of 6.3 miles of the Southern Pacific Company's right-of-way. Prior to the condemnation action Southern Pacific had been able to gain access to their railroad at any place along the 6.3 miles where the railroad tracks paralleled the highway. When the State converted U. S. 80 to Interstate Highway 8 it was necessary for the divided highway to be fenced so as to control the access. The 6.3-mile stretch begins five miles west of Dateland, Arizona, and runs westerly, ending just east of Mohawk Pass.

The State secured an Order for Immediate Possession on November 14, 1964. The matter came for trial on March 14, 1967. The jury returned a verdict fixing damages for the land taken which is not contested, but could not agree on severance damages for the control of the access to the remainder of Southern Pacific's property and therefore was discharged. Both parties stipulated to permit the court to sit as the jury and perform the same function the jury was to have performed on the question of severance damages, preserving all objections which had been made. The court found $21,000 in severance damages and this appeal has been perfected from the judgment thereon.

At the trial Southern Pacific did not attempt to prove the amount of decrease in the market value of the 6.3 miles in question due to the controlled access. Rather, the appraisers on behalf of Southern Pacific testified that it was impossible to set a fair market value upon the access control of 6.3 miles of a multimillion dollar railroad system. Therefore, the appraisers attempted to show severance damages by showing the amount of expense and delay the access control would inflict upon Southern Pacific. In setting severance damages the appraisers principally testified as to the cost of curing the defect forced upon Southern Pacific by the State's action. They testified as to the probable cost of constructing a road alongside the Southern Pacific tracks to provide access to the railroad. Witnesses testified that the cost of constructing a substitute access road would vary from $22,000 to $170,000, depending upon the type of surface used. It was this evidence and this theory of the case which the State objects to in this appeal. The principal question to be answered is whether the trial court committed error in the admission of evidence relating to damages without determining the fair market value of the property before and after the access was controlled.

■ There appears to be no question but that in Arizona a landowner may get compensation for damage of his right of ingress or egress to a controlled-access highway. The leading case in Arizona on this point is State ex rel. Morrison v. Thelberg, 87 Ariz.

318, 350 P.2d 988 (1960), which states as follows:

"When the controlled-access highway is constructed upon the right of way of the conventional highway and the owner's ingress and egress to abutting property has been destroyed or substantially impaired, he may recover damages therefor. The damages may be merely nominal or they may be severe. Other means of access such as frontage roads as in the instant case may be taken into consideration in determining the amount which would be just under the circumstances. (citing case) Other means of access may mitigate damages, (citing case) but does not constitute a defense to the action however. (citing case)" 87 Ariz. 318 at 325, 350 P.2d at 992.

It appears to be now indisputable that if it can be shown that the landowner was damaged by a material impairment of the ingress and egress to a public highway, such damage is compensable. State ex rel. Herman v. Wilson, 103 Ariz. 194, 438 P.2d 760 (1968); State ex rel. Herman v. Jacobs, 7 Ariz.App. 396, 440 P.2d 32 (1968). Such was the situation in this case. The remaining problem, however, is how are these compensable damages computed?

Again, Thelberg, supra, is the classic Arizona case in this area. It points out:

"The measure of damages for the destruction or impairment of access to the highway upon which the property of an owner abuts is the difference between the market value of the abutting property immediately before and immediately after the destruction or impairment thereof. The damages awarded the abutting landowner for destruction or impairment of access therefore is based, not upon the value of the right of access to the highway, but rather upon the difference in the value of the remaining property before and after the access thereto has been destroyed or impaired. This in turn is based upon the highest and best use to which the land involved is best suited before and after the right of access is

molested. (citing cases)" 87 Ariz. at page 325, 350 P.2d at page 992.

The appellee sets forth that because of the uniqueness of the situation there can be no market value ascertainable in this case. If the market value is unascertainable, what measure of damages is to be used? This is apparently a case of first impression in Arizona on this issue. The appellee feels that the correct measure of damages when the market value cannot be ascertained is the cost of repair or the capitalized cost of inconvenience, whichever is less. We are inclined to agree with this position.

The last clause of the Fifth Amendment to the Constitution of the United States, not by its terms applicable to the state governments, reads: "nor shall private property be taken for public use, without just compensation". The due process clause of the Fourteenth Amendment has been held by the United States Supreme Court to impose a similar limitation upon the states. Chicago B. & Q. R. v. City of Chicago, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897). The Arizona Constitution, Art. 2, Sec. 17, A.R.S., states: "No private property shall be taken or damaged for public or private use without just compensation having first been made."

It is felt by this Court that the prohibition against "taking" private property for public use without just compensation, contained in both our State and National Constitutions, is designed to protect not only the landowner's proprietary interest, but also his economic interest. The United States Supreme Court has mentioned that "the Fifth Amendment guarantee that private property shall not be taken for public use without just compensation was to bar Government from forcing some people to bear public burdens which in all fairness and justice should be borne by the public as a whole." Armstrong v. United States, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed. 2d 1554 (1960). It should also be pointed out that the classical eminent domain cases of United States v. Causby, 328 U.S. 256,

266, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946), and United States v. Cress, 243 U.S. 316, 328, 37 S.Ct. 380, 385, 61 L.Ed. 746 (1917), mentioned that "it is the character of the invasion, not the amount of damage resulting from it, so long as the damage is substantial, that determines whether it is a taking." Each of these cases, although primarily concerned with the term "taking" appears to point to a constitutional protected standard of fair dealing.

■ It would be a direct violation of Article 2, Section 17, of the Arizona Constitution and the Fifth and Fourteenth Amendments of the Federal Constitution if this Court denied compensation where damages are shown and a market value cannot be shown.

■ The cases of Thelberg, supra, Pima County v. De Concini, 79 Ariz. 154, 285 P. 2d 609 (1955), and the recent case of Phoenix Title & Trust Co. v. State ex rel. Herman, 5 Ariz.App. 246, 425 P.2d 434 (1967), indicate that if there is an ascertainable market value, great consideration should be given to this measure of compensation for damages. If the character of the property absolutely precludes any ascertainment of the market value, then we hold that consideration may be given to the value peculiar to the owner, the cost of cure, replacement cost minus depreciation, capitalized cost of inconvenience, or any other manner which would be a fair method of compensating a landowner for the damages to his property from eminent domain.

This Court feels that this holding is a mandatory requirement of the Constitution as pointed out in the case of United States v. Cors, 337 U.S. 325, 69 S.Ct. 1086, 93 L.Ed. 1392 (1949). In that case the court showed that the judiciary may not limit just compensation to a market value definition.

"The Court in its construction of the constitutional provision has been careful not to reduce the concept of 'just compensation' to a formula. The political ethics reflected in the Fifth Amendment reject confiscation as a measure of jus-

tice. But the Amendment does not contain any definite standards of fairness by which the measure of 'just compensation' is to be determined. (cases cited) The Court in an endeavor to find working rules that will do substantial justice has adopted practical standards, including that of market value. (case cited) But it has refused to make a fetish even of market value, since it may not be the best measure of value in some cases. * * *" 337 U.S. 325 at page 332, 69 S.Ct. 1086, at page 1090.

The approach by our Court is not a novel approach; it has been recognized in many cases in other jurisdictions. In the case of United States v. 205.03 Acres of Land, etc., 251 F.Supp. 858 (W.D.Penn. 1966) it was held that where the land had no market value in the usual sense, the court could resort to the best available data to ascertain just compensation.

In the case of State ex rel. State Highway Commission v. Barbeau, 397 S.W.2d 561, 566 (Mo.1965), quoting with approval from Graceland Park Cemetery Company v. City Of Omaha, 173 Neb. 608, 114 N.W. 2d 29, 31, 32 (1962), it was said, "* * When the property is such that evidence of fair market value is not obtainable, necessarily some other formula for fixing the value of the property must be devised." In those cases the courts felt that the appropriate method for finding value of condemned cemetery land was the value of gravesites taken by applying units of values based on average sale price per gravesite in adjoining used sections of cemeteries, less reasonable cost of development, sales, maintenance, administration, perpetual care, and other expenses affecting its value. This is certainly a far cry from the simple market value approach, but necessary to determine fair and just compensation.

The California Supreme Court recognizes the inapplicability of the market value approach in certain situations similar to this. It has said, in dicta, that, " 'fair market value' is not the exclusive standard by which to measure just compensation, and it is

widely recognized that such a standard is meaningless when as here, a public utility is being condemned." Citizens Utilities Company of California v. Superior Court, etc., 59 Cal.2d 805, 31 Cal.Rptr. 316, 382 P.2d 356, 365 (1963). And in an earlier case, although using a market value approach, the court realized that:

> "The rules for determining value of land taken by condemnation cannot, from the nature of the case, be inflexible. In each case just compensation is the goal; and where rigid application of even a settled rule will produce injustice it must be departed from so far as made necessary by the circumstances of the case. * * " Napa Union High School District of Napa County v. Lewis, 158 Cal.App.2d 69, 322 P.2d 39, 41 (1958).

The Montana courts have also pointed out the undesirability of applying only one method of measuring damages. In the recent case of Alexander v. State Highway Commission, 147 Mont. 367, 412 P.2d 414, 416 (1966), it was pointed out:

> "Just compensation is determined by equitable principles. Its measure varies with the facts. Where the circumstances will not permit, the value of property cannot be measured solely by formula or artificial rule. * * * "

It appears to this Court that any other decision by the lower court would have been directly contrary to the United States and Arizona Constitutions. To require the defendant to prove something which was impossible to prove upon the threat of non-compensation if he failed to do so would have been a great injustice. This case does not change any of the rules as to burden of proof or admissibility of evidence, and is to be a precedent only in those rare cases when the condemnee is able to prove that there is no market value which can be used to measure his compensatory damages.

■■ The Constitution, both State and Federal, requires "just compensation". This Court holds that in meeting this test the trial court must use the measure of damages which is most appropriate under the circumstances to insure fair compensation to the landowner whose property rights are taken. The constitutional test makes it mandatory upon the trial court to determine what is fair and just compensation, and to use this method or formula to arrive at this amount of damages. In keeping with this, we believe that the evidence offered, having first shown the absence of a market value, the cost of cure and capitalized cost of inconvenience evidence was relevant and material to show the proper measure of damages in this case.

■ We now pass upon the sufficiency of the evidence to sustain the award of damages. The appellate court will not weigh the evidence to determine its preponderance upon a disputed fact. Its only concern is whether the facts have been established which might reasonably support the judgment. Rightmire v. Sweat, 83 Ariz. 2, 315 P.2d 659 (1957). For a recent case from this Court, see Phoenix Title & Trust v. Arizona Public Service Co., 8 Ariz. App. 221, 445 P.2d 169 (1968) (decided Sept. 1968)

In the opinion of appellee's appraisers, the impaired access diminished the value of the property. They also felt there was no way of ascertaining the "market value" as such of a 6.3-mile integral segment of a transcontinental railroad, either before or after the taking of the access rights in question.

Mr. Rexford Shaffer, an appraiser for Southern Pacific Company, was asked:

> "Q. Other than the cost to cure approach, was there any other valid approach which you could use to measure the damages?
>
> "A. No, sir, I could find none.
>
> "Q. All right. I will ask you whether or not in your work in connection with the taking of the abutter's access you determined whether or not the erection of the fence along the north side of the railroad right of way for a distance of 6.3 miles with access limited only through the three gates caused any diminishment in the value of the railroad property?

\* \* \* \* \* \*

"A. Yes, sir.

"Q. You did determine the limitation of the access created by the fence and gates had caused a diminishment in the value of the railroad property, is that correct?

"A. Yes, sir, that is my opinion."

 The testimony of the other appraiser for the appellee, Mr. Paul Fullerton, was substantially the same. He stated that the diminution would be $100,757. Mr. Shaffer testified that the value would be diminished by about $172,000. He was also permitted to testify as to the capitalized cost of inconvenience to the railroad which came to $21,390. The judge and jury took advantage of an opportunity to view the premises which placed them in a better position to evaluate the evidence and damages. Board of County Commissioners of Dona Ana County v. Little, 74 N.M. 605, 396 P.2d 591 (1964). All of this testimony appears to this Court to answer affirmatively the inquiry as to whether there was sufficient evidence to support the trial court's decision of severance damages in the amount of $21,000. We find there was substantial evidence from which reasonable men could have found for the successful party in the amount in question and therefore must sustain the verdict and judgment. Land-Air, Inc. v. Parker, 103 Ariz. 1, 435 P.2d 838 (1968); Grant v. White, 103 Ariz. 257, 439 P.2d 828 (1968); Fritts v. Ericson, 103 Ariz. 33, 436 P.2d 582 (1968).

Affirmed.

CAMERON, C. J., concurs.

STEVENS, Judge (dissenting).

I am unable to agree with the majority. In my opinion the judgment as to severance damage is highly speculative. The use of the right-of-way is no more difficult than the use of other segments of the appellee's right-of-way. I cannot believe that had it been necessary to take a portion of the land, rather than restricting access, the appellee would have failed to produce evidence as to the value of the land taken.

The majority opinion sets forth the Arizona law that the measure of damages is the difference between the before value and the after value. Failing to produce competent evidence to meet this well-established test, the maximum recovery for severance damage would be nominal damages. I cannot consider $21,000 to be nominal. We often have situations in the civil law where the right of recovery is denied only because of inadequacy in the proof of damages.

Being in the minority, I express no views as to the appropriate trial court procedures which should hereafter be followed or whether this Court should undertake to determine and assess the nominal damages.