592 P.2d 383

**In the Matter of ONE 1974 MERCEDES BENZ, I.D. NO. 10704412016141, LICENSE NO. TMP–363.**

**Paul Lee ZISSER, Appellant,**

v.

**STATE of Arizona, Appellee.**

**No. 1 CA–CIV 3877.**

Court of Appeals of Arizona, Division 1, Department B.

March 1, 1979.

Debus, Busby & Green by Jordan Green, Robert J. Lyman, Phoenix, for appellant.

Charles F. Hyder, Maricopa County Atty. by Daniel F. McIlroy, Deputy County Atty., Phoenix, for appellee.

OPINION

JACOBSON, Presiding Judge.

The basic issue raised by this appeal from the forfeiture of a vehicle used in a narcotics violation is whether the denial of a motion to suppress evidence, based upon an allegedly illegal search and seizure in the underlying criminal action operates as a bar, under the principles of collateral estoppel, to relitigating the legality of the search and seizure in the forfeiture proceedings.

The facts necessary to decide this narrow issue (additional facts touching on other

issues raised will be set forth later in this opinion) are that on July 15, 1976, the real party in interest, Paul L. Zisser, was arrested for various narcotics violations involving cocaine. The 1974 Mercedes Benz which is the subject matter of this forfeiture was seized at that time. Two days later, the state filed a notice of intention to institute forfeiture proceedings pursuant to A.R.S. § 36–1043 against the automobile.

Zisser filed a response to the notice alleging that the vehicle had not been used in the manner proscribed by A.R.S. § 36–1041 and that the drugs were seized pursuant to an unlawful arrest, search and seizure. This latter defense was based on the principle that evidence illegally seized under the Fourth Amendment may not be introduced in forfeiture proceedings. *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965).

Meanwhile, criminal proceedings arising out of the narcotics violations were also instituted in Maricopa County Superior Court against Zisser and a co-defendant, Stanley Akers, Jr. (*State v. Akers and Zisser,* Maricopa County Superior Court No. CR–94397.) In the course of the criminal proceedings, Zisser filed a motion to suppress based upon an allegedly illegal arrest and an illegal search and seizure. A hearing was held on this motion at which evidence was presented and the court subsequently denied the motion to suppress, finding that Zisser's arrest and the seizure of the narcotics were legal.

On February 17, 1977, at the opening of the hearing on the forfeiture action, the state argued that the prior ruling of the court in the criminal case denying the motion to suppress operated as a bar to reconsideration of the validity of the arrest and search and seizure in the forfeiture action. After some initial argument on this point, the hearing proceeded. Post-trial memoranda were filed which dealt with the question of whether the prior denial of the motion to suppress in CR–94397 barred Zis-

ser from objecting to the receipt of the evidence allegedly illegally obtained; whether, assuming that there was no bar, the evidence was unlawfully obtained; and finally, assuming the admissibility of the evidence, whether it was sufficient to support a ruling forfeiting the vehicle. On April 12, 1977, judgment was filed in the forfeiture case, ordering that the vehicle in question be forfeited to the State of Arizona and that Zisser's title to the vehicle be forfeited to the state. The judgment recited that it appeared "that all of the State's allegations are true."

Both parties agree, based upon the broad holding of the trial court, that it did in fact find that the denial of the motion to suppress in the criminal action collaterally estopped Zisser from relitigating this issue in the forfeiture proceedings. Thus, the issue is squarely presented to this court as to whether that application of the doctrine of collateral estoppel was proper.

The United States Supreme Court tells us this about the doctrine:

"'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. Although first developed in civil litigation, collateral estoppel has been an established rule of federal criminal law at least since this Court's decision more than 50 years ago in *United States v. Oppenheimer,* 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161." *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475 (1970);[1] *see also State v. Stauffer,* 112 Ariz. 26, 536 P.2d 1044 (1975).

Zisser contends that the doctrine of collateral estoppel is inapplicable because of the lack of the "same parties" in both litiga-

---

1. *Ashe v. Swenson* held that the doctrine of collateral estoppel was embraced within the Double Jeopardy clause of the Fifth Amend-

ment of the United States Constitution and applicable to the states by the Fourteenth Amendment.

tions.[2] He contends that in the criminal action it was the state versus himself, while in the civil forfeiture proceedings, it is the state versus his 1974 Mercedes Benz automobile. He thus concludes that the difference in parties precludes the application of the doctrine.

In order to answer this contention, it is necessary to analyze the nature of forfeiture proceedings.

Forfeitures originated under the common law from the premise that the article to be forfeited was a deodand (derived from the Latin *Deo dandum,* meaning "that must be given to God"). That is, that if an inanimate object caused harm to the king's subjects, it was forfeited to the crown to insure that the thing would be put to a charitable use, thus atoning for the harm it caused. *See* O. Holmes, The Common Law, ch. 1 (1881).

The deodands of the common law did not become part of the common law of this country. *Parker-Harris Co. v. Tate,* 135 Tenn. 509, 188 S.W. 54 (1916). However, the vestiges of that philosophy—that somehow the article itself was an offender—did receive recognition in this country. As stated in *The Palmyra,* 25 U.S. (12 Wheat.) 1, 12, 6 L.Ed. 531 (1827), a case involving the forfeiture of a vessel engaged in piratical aggression, where the owner of the vessel was innocent of the piracy:

"The thing is here primarily considered as the offender, or rather the offense is attached primarily to the thing; and this, whether the offense be *malum prohibitum* or *malum in se.* . . . [T]he practice has been, and so this court understand the law to be, that the proceeding *in rem* stands independent of, and wholly unaffected by any criminal proceeding *in personam.*"

Under the deodands of the common law or under the "thing is the offender" rationale of forfeitures, Zisser's argument on non-mutuality of parties would be sound. However, in our opinion, the rationale underlying forfeiture proceedings has passed from the fallacious premise upon which it was based (i. e., that if a knight slays another with a sword, the sword is also guilty of murder) to a more rational basis, that is, that the forfeiture proceeding is merely an additional penalty for the criminal offense. As was stated in *In re One 1965 Ford Mustang,* 105 Ariz. 293, 299, 463 P.2d 827, 833 (1970):

"Under the present state of constitutional development, there can be no question but that forfeiture of an automobile is punishment for a criminal offense. It is the only way a car could be forfeited; otherwise, it would be taking property without due process of law."

Consistent with this theory of *personal* punishment, the United States Supreme Court has made applicable the personal guarantees of the Fourth and Fifth Amendments to "in rem" forfeiture proceedings. *See United States v. United States Coin and Currency,* 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971) (holding the Fifth Amendment right against self incrimination applicable in forfeiture proceedings); *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965) (holding the Fourth Amendment guarantee against unlawful searches and seizures applicable in forfeiture proceedings).[3]

When viewed in this context, the criminal action and the forfeiture action are nothing more than twin aspects of a statutory scheme of punishment. It is thus clear that Zisser is as much a party to the forfeiture

---

**2.** We have assumed, as have the parties, that the order denying the motion to suppress in the criminal action was sufficiently final to invoke the doctrine in the first instance.

**3.** We realize that the case of *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974) holding that an innocent owner's interest could be forfeited regardless of his criminal culpability, has somehow fallen between the logical cracks of a "criminal punishment" rationale. Without being so audacious as to say that the United States Supreme Court is wrong, we are bound by the Arizona Supreme Court's holding on that particular issue. *See In re One 1965 Ford Mustang, supra.*

proceedings as he was to the criminal action. We would find it slightly incongruous to say he was not a party to the forfeiture proceedings, and yet allow him to raise the personal Fourth Amendment right to be free of unlawful searches and seizures. We therefore find sufficient mutuality of parties between the two actions to satisfy this requirement of collateral estoppel. Conversely, we would also find collateral estoppel applicable if the criminal judge had granted the motion to suppress and the state had subsequently sought forfeiture.

Furthermore, there is no question about the identity of the issues being litigated. The same drugs were sought to be excluded by Mr. Zisser in both the criminal case by way of his motion to suppress and in the forfeiture case by way of his answer alleging that the drugs had been illegally seized. The factual circumstances surrounding the seizure of the drugs in both cases were identical. All of the testimony would have been the same.

■ Based on the foregoing, we hold that collateral estoppel can be invoked in a subsequent forfeiture action based upon a motion to suppress ruling which becomes final in the underlying criminal action.

Since we hold that Zisser is precluded from relitigating the issue of the validity of the seizure of the drugs introduced into evidence against him, the only question remaining is whether the evidence presented at the forfeiture hearing justified the forfeiture of the vehicle. In reviewing such questions, this court does not sit as the trier of fact but rather its duty is to determine whether facts have been established which reasonably support the judgment. *State ex rel. Herman v. Southern Pacific Co.*, 8 Ariz. App. 238, 445 P.2d 186 (1968).

■ The evidence before the court below indicated that on the day of Zisser's arrest, he, along with Akers arrived at an auto rental agency in Scottsdale in the Mercedes Benz vehicle which is the subject of this forfeiture. They had called earlier and arranged to rent a small vehicle. Upon arriving and being shown an open hatchback automobile, they refused to rent it and instead took a Maverick which had a closed trunk. The proprietor of the agency noticed a green ice cooler inside the Mercedes Benz behind the front seat. Later that day, police officers observed the Maverick which had been leased from the agency in the parking lot of a restaurant in Scottsdale. Parked next to it was the Mercedes Benz. Both Zisser and Akers were observed standing between the Mercedes Benz and the Maverick with the Maverick's trunk open. As the officers drove by they closed the trunk lid on the Maverick. The Mercedes subsequently left the parking lot and returned later that evening. Akers got out of the automobile and went to the Maverick while Zisser drove the Mercedes Benz out onto Indian School Road. Narcotics sniffing dogs had already been over the Maverick and had given a positive response for the presence of narcotics. Officers moved in and arrested Akers. Inside the trunk of the Maverick was found the green ice cooler which had been previously observed behind the front seat of the Mercedes Benz. Narcotics were found inside this ice chest. Meanwhile the detectives located Mr. Zisser in a phone booth at a Circle K store on Indian School Road. The Mercedes Benz was parked right next to the telephone booth with its lights on and its motor running. Mr. Zisser was arrested and a vial found inside his coat pocket contained narcotics and barbiturates.

We find that this evidence reasonably supports the judgment that the Mercedes Benz automobile was used in violation of the forfeiture statute A.R.S. § 36–1041.

Judgment of forfeiture affirmed.

HAIRE, J., and OGG, C. J., concurring.