**REORGANIZED SCHOOL DISTRICT NO. 2, Plaintiff-Respondent,**

v.

**MISSOURI PACIFIC RAILROAD COMPANY, Defendant-Appellant.**

**No. 34770.**

Missouri Court of Appeals, St. Louis District, Division Two.

Oct. 23, 1973.

Motion for Rehearing or Transfer Denied Nov. 13, 1973.

Application to Transfer Denied Jan. 14, 1974.

Walter S. Drusch, Jr., Spradling, Bradshaw & Dillard, A. M. Spradling, Jr., Cape Girardeau, for defendant-appellant.

Roberts & Roberts, Farmington, Dearing, Richeson, Roberts & Wegmann, Hillsboro, for plaintiff-respondent.

GUNN, Judge.

Action for inverse condemnation brought by plaintiff-respondent school district against defendant-appellant railroad for the taking of a portion of respondent's school campus in Ironton, Missouri, and subsequent damage to the remainder of the campus. Verdict and judgment of $140,000.00 were for respondent and appellant appeals. We affirm the judgment.

In 1966, respondent school district operated a high school campus in Ironton for approximately 350 students. The campus was a two-block parcel bounded on the north by Dent Street, on the south by Reynolds Street and on the east by appellant's right-of-way. Main Street, or Mo. Highway 21, was to the west. The campus was bisected by an incomplete street known as Madison Street which could be entered from Main Street and was used only as a car and school bus turnaround to discharge students and others at the high school building. It was not a through street. The campus as of November, 1966 consisted of two classroom buildings, a gymnasium and athletic field and playground area. Students would cross Madison

Street on a daily basis going between classes and in making use of the athletic and school facilities.

Commencing in November, 1966, appellant widened its right-of-way fourteen feet onto the school property parallel to appellant's property between Dent and Reynolds Streets. Appellant also anchored an overpass on Madison Street which it constructed over its right-of-way leading to the industrial and residential areas east of the right-of-way and school property. Madison Street was graded through the school campus at appellant's direction and later paved. Dent and Reynolds Streets were then closed off at appellant's right-of-way. Madison Street, through the school campus and overpass over appellant's right-of-way, became the access road from points west into the industrial and residential area of East Ironton.

Respondent filed suit for damages by reason of inverse condemnation and on motion was granted a summary judgment against appellant to the extent that appellant did take a fourteen-foot strip for the length of respondent's property and did anchor the overpass on nineteen feet of Madison Street. No appeal was taken from the summary judgment.

Respondent's testimony at the trial was that prior to appellant's taking, plans had been made to move the high school to a new facility at another part of Ironton and to retain the existing site for a junior high school campus. These plans had to be abandoned with the taking, particularly because of Madison Street, as the facility was rendered useless for school purposes, due to the whittling away of the school grounds which were described as meeting only minimal area requirement initially and by reason of a major traffic artery bisecting the school and creating a safety hazard to students crossing the street against traffic to attend classes. The junior high school was then incorporated into the new high school at the new location which to respondents was undesirable but necessary.

There was also testimony that an effort was made to have the facility utilized as a technical school, but the plan was rejected by the State of Missouri because of the division of the property by the opening of Madison Street and lack of space due to the taking.

During the taking of the property, and because of the grading of Madison Street, the school had to cancel its athletic programs, as Madison Street was made to extend through the baseball diamond and track.

Respondent's evidence was that the property was rendered useless for school purposes by reason of the taking, but of necessity was continued in use until the new facilities could be constructed; that there were no other school facilities available until after construction of the new school. Valuation of the properties by respondent for the purpose of determining damages was based on the replacement value of the buildings, less depreciation as of 1966, and based on a fifty-year useful life of each building. Respondent's witnesses testified that the replacement value of the buildings, less depreciation, ranged from $276,000 to $201,612. The theory of respondent's case —and their witnesses testified accordingly —was that since the buildings were useless for school purposes after the taking and could not be sold as such, particularly after the opening of Madison Street, respondent's damages should be measured by the replacement cost of the buildings less depreciation; that there was no fair market value of used school buildings as there was no other use therefor, and the replacement cost less depreciation method was the accepted means of evaluating the value of the school buildings for purposes of determining respondent's damages.

Witnesses called by the appellant for expert opinion as to consequential damages from the taking of the fourteen-foot strip of respondent's property and the change of traffic conditions on Madison Street likewise testified that the means of assessing

such damages would be through replacement costs of the buildings, less depreciation. As James L. Tuller, a real estate appraisal witness for appellant, testified: "School buildings usually don't sell on the open market, therefore, there is no market data on comparable sales in making an analysis and adjusting for differences." Each of the appellant's expert witnesses testifying as to damages acknowledged that the change in traffic patterns on Madison Street added a functional obsolescence to the value of the school buildings and accounted for the major portion of respondent's damages. Another of appellant's expert witnesses testified that the traffic flow on Madison Street interfered with the use of the property for a junior high school campus; that as a former school board member for another district, he would not have tolerated a similar situation in his district. Appellant's estimates of damages to respondent for the taking of the fourteen-foot strip and the opening of Madison Street ranged from $27,800.00 to $33,840.00. The date upon which the estimates were based was November, 1966. The jury returned a verdict for respondent in the amount of $140,000.00.

Appellant's first points of error are concerned with the giving of Instruction No. 3, which was MAI No. 9.02 Modified, and provided:

"You must award Plaintiffs such sum as you believe was the difference between the value of the property as used for a school campus as a whole at the time immediately before the taking and the value of Defendant's remaining property after such taking, which difference in value is the direct result of the taking and the uses which Defendant has the right to make of the property taken."

Appellant bottoms its challenge to Instruction No. 3 on the ground that it was an unlawful deviation from MAI No. 9.02,[1] in that, a) it failed to specify the date of taking; b) it omitted the word "immediately" between the words "property" and "after" as a time-limit factor for consideration of value (the value of the property immediately before and immediately after the taking); c) it erroneously deviated from the measure of damages in a condemnation proceeding which, according to MAI 9.02, is the fair market value of the property immediately before and immediately after the taking as opposed to the instruction in this case which was the difference in value of the property used as a school campus as a whole immediately before the taking and value of the remaining property after the taking; d) the word "defendant" was erroneously used instead of "plaintiff" in describing the ownership of the property taken, thus causing the jury to be misled.

■ We find that in this case the measure of damages based on a fair market value, as urged by appellant, would not be appropriate. There was no evidence presented to the jury by either respondent or appellant suggesting that fair market value be the test for measuring damages. Rather, the evidence of both parties in computing respondent's damages was the replacement value of the school buildings less depreciation. At least one of the appellant's witnesses acknowledged that since schools had a very limited use, there was no market data available. Consequently, fair market value would not be an accurate measure in this case. Instead, we believe State ex rel. State Highway Commission v. Mount Moriah Cemetery Assn., 434 S.W.2d 470 (Mo.1968), controls, and it would be improper to instruct a jury applying a fair market value test where there is no evi-

---

1. MAI 9.02:
"You must award defendant such sum as you believe was the difference between the fair market value of defendant's whole property immediately before the taking [on (date of appropriation)] and the value of defendant's remaining property immediately after such taking, which difference in value is the direct result of the taking and of the uses which plaintiff has the right to make of the property taken.

dence of such value. Our Supreme Court in Mount Moriah quoted with approval from Graceland Park Cemetery Co. v. City of Omaha, 173 Neb. 608, 114 N.W.2d 29, 31–32 (1962), where it was said:

"When the property is such that evidence of fair market value is not obtainable, necessarily some other formula for fixing the fair value of the property must be devised. This is true, as we view it of such properties as *school yards*, church yards, college campuses, buildings under construction, and cemeteries." (Emphasis added.)

Also, in Mount Moriah the court accepted the instruction recited in Cementerio Buxeda v. People of Puerto Rico, 196 F.2d 177, 180 (1st Cir. 1952), where the court said: "The defendant should have been allowed to show the *value of the property as used for a cemetery as a whole* at the time of the condemnation and its value after the condemnation. The difference would be the measure of the compensation allowable to it." (Emphasis added.)

Thus, from Mount Moriah, we have acceptance that fair market value is not to be used where evidence of such value is not obtainable, as in the case of school grounds and school campuses. And we also have approval of the language in Instruction No. 3 regarding, "the value of the property as used for a school campus as a whole." In this case the words "school campus" are substituted for the word "cemetery" as used in Mount Moriah.

■ There was no dispute that the entire grounds were essential to the operation of the school. It was conceded even by appellant's experts that the taking of portions of respondent's property and the grading and opening of Madison Street adversely affected appellant's efficient and essential use of its properties. Therefore, it was necessary to consider the taking and interference as affecting the whole campus. MAI 9.02, unmodified, relates to fair market value only and would not be appro-

priate. It was therefore necessary to modify Instruction No. 3 concerning the value of respondent's property as used for a school campus as a whole, and the deviations from MAI No. 9.02 were necessary to cover the issues submitted as there was no applicable MAI. Slagle v. Singer, 419 S.W.2d 9, 13 (Mo.1967).

Nor is the formula of replacement costs less depreciation as applied in this case unnecessarily harsh. There is an abundance of law from other jurisdictions holding that where school property is taken the award is the reproduction or replacement costs undiminished by depreciation. State v. Jefferson County Board of Education, 282 Ala. 303, 211 So.2d 146, 148 (1968); County of Cook v. City of Chicago, 84 Ill. App.2d 301, 228 N.E.2d 183, 187 (1967); City of Wichita v. Unified School District No. 259, 201 Kan. 110, 439 P.2d 162 (1968); Commonwealth v. City of Winchester, 431 S.W.2d 707, 710 (Ky.1968); City of San Antonio v. Congregation of Sisters of Charity, 404 S.W.2d 333, 334 (Tex.Civ. App.1966); State v. Waco Independent School District, 364 S.W.2d 263, 266 (Tex.Civ.App.1963). In City of Wichita v. Unified School District No. 259, *supra*, it was stated:

"The city concedes that in the ordinary sense there is no true market value for school buildings, inasmuch as they are not commonly bought and sold on the open market, but argues that replacement cost must be subjected to depreciation and obsolescence. * * *"

* * * * * *

"* * * The status of a school district deprived by condemnation of its property differs radically from that of a private condemnee. A school district exists to further the education process, and when its school property has been condemned, it may not take its money and liquidate its operations. The district remains charged with the same public duty of providing educational facilities for its children as it had before its property

was taken. And the cost of constructing substitute facilities is equally great whether those condemned were new or ancient.

"We believe the cases generally hold that where a public body sustains the loss of a facility essential to the performance of its public function, it is entitled to receive such compensation as will put it in as good a position pecuniarily as if its property had not been taken." * * *

"This principle contemplates that replacement costs are not to be diminished by deductions for depreciation or obsolescence." (l. c. 167–168 of 439 P.2d)

■ We find that the admission of evidence concerning replacement costs of respondent's property, less depreciation, as the measure of respondent's damages was not prejudicially erroneous against appellant, particularly as such was the evidence of both parties. We do not decide whether evidence concerning replacement costs undiminished by depreciation would be proper, as that is not at issue in this case.

■■ While it would have been preferable to have given a date of taking in Instruction No. 3 and to have inserted the word "immediately" between the words "property" and "after", the failure to do so cannot be considered prejudicial error against appellant in this case. The only evidence concerning the date of taking was November, 1966, as presented by both parties. The jury could not have been misled in this regard. And the insertion of the word "immediately" as urged by appellant would only have a beneficial effect in respondent's behalf, for if the jury were to consider the value of respondent's property at some point in time other than immediately after the taking, the respondent's damages would have been reduced by reason of the depreciation factor the jury was to consider. Thus, respondent's greatest damages would occur immediately after the taking for depreciation of respondent's

property would increase thereafter. Appellant cannot therefore complain that the omission of the word "immediately" would be prejudicial against it. Griggs v. Riley, 489 S.W.2d 469, 474 (Mo.App.1973).

■ Neither do we believe the transposition of "defendant" in place of "plaintiff" in the instructions, while error, was prejudicial against the appellant, as the jury could scarcely have been misled to any consideration of the value of defendant's property. The testimony centered only on plaintiff's property; there was no mention of defendant's property and nothing to place any value therefor. In Jarrett v. St. Francois County Finance Co., 185 S.W.2d 855, 861 (Mo.App.1945), the court in commenting on the use of defendant instead of plaintiff in an instruction stated: "Obviously, this was a mistake inadvertently made. A careful reading of the instruction shows clearly that the jury could not have been misled by what amounts to nothing more than typographical error and a reversal on such grounds is not warranted." (l. c. 861)

Although there are cases to the contrary, there was no evidence here that the jury in any way could be misled by the transposition of the two words. See also Wegener v. St. Louis County Transit Co., 357 S.W. 2d 943, 949 (Mo. banc 1962); Suttie v. Aloe, 39 Mo.App. 38, 42 (1889).

Appellants next contend that respondents failed to show ownership or interest in the property taken; that while deeds to the property showing ownership in Consolidated School District No. 3 and Ironton School District No. 26 were received in evidence, there was no direct evidence that respondent Reorganized School District No. 2 was successor in interest to those properties.

■ We reject appellant's argument on this point. There was no challenge to the testimony that respondent was the only authorized school district for Ironton. As a consequence, it would be entitled to all as-

sets of former districts, Lewis County C–1 School District v. Normile, 431 S.W.2d 118, 121 (Mo. banc 1968). Appellants did not challenge the summary judgment finding the taking by appellants of the fourteen-foot strip and the anchoring of the overpass on a portion of Madison Street described as a part of respondent's property. The testimony of appellant's witnesses concerning respondent's damages was based on the grading or taking of Madison Street, thus rendering the campus functionally obsolete; there was no objection to a surveyor's report showing and describing Madison Street as belonging to respondent. The cumulative effect of the foregoing factors is sufficient to erase the question of title. We, therefore, find that there was adequate evidence to establish respondent's ownership in Madison Street.

■ We also reject appellant's contention that since there was a continued use of respondent's buildings after their taking, testimony relating to replacement value of the buildings was improper. The continued use of the buildings was necessary, as there was no other place available. Even appellant's witnesses testified that the opening of Madison Street created an intolerable situation; thus, the mere fact that the buildings had to be used out of necessity does not render the replacement value evidence improper, particularly, where, as here, appellant espoused the same theory in the presentation of its case concerning respondent's damages.

■ Appellant also contends that it was error to allow evidence as to the traffic flow on Madison Street for the reason that, at most, appellant's taking involved only 200 feet of Madison Street and that the respondent could thereby control traffic on the entire street by barricading it. Where there has been a permanent trespass committed by a public utility, the property owner has an election of remedies, one of which is inverse condemnation. Beetschen v. Shell Pipe Line Corp., 248 S. W.2d 66 (Mo.App.1952), aff'd 363 Mo. 751,

253 S.W.2d 785 (1952). Respondent elected to proceed in inverse condemnation and by so doing lost control of the property which was treated by respondent as condemned. The easement, in effect, passed to appellant condemnor. Harris v. L. P. & H. Construction Co., 441 S.W.2d 377, 381 (Mo.App.1969). Evidence as to traffic flow was therefore proper to establish elements of respondent's damages. State ex rel. State Highway Commission v. Galeener, 402 S.W.2d 336, 340 (Mo.1966).

■ Appellant has urged that the respondent improperly amended its petition concerning traffic on Madison Street, as three years prior to the trial, respondent had confessed a motion to dismiss a paragraph in its petition relating to traffic on Madison Street. Two years prior to trial, respondent submitted an amended petition which realleged the matters regarding traffic flow on Madison Street as contained in its initial petition. We find no error in either permitting the amendment or, as we previously commented, in allowing testimony regarding traffic flow on Madison Street. By permitting the amendment the court's action was consistent with the intendment of Civil Rule 55.53 V.A.M.R. permitting liberal amendments to pleadings. Certainly, appellant cannot claim surprise as the amendment was made two years before trial. Middleman v. Complete Auto Transit, Inc., 486 S.W.2d 456 (Mo. banc 1972); Meinecke v. Stallsworth, 483 S.W. 2d 633 (Mo.App.1972); Condos v. Associated Transports, Inc., 453 S.W.2d 682 (Mo.App.1970); Northwest Missouri State Fair, Inc., v. Linville, 448 S.W.2d 274 (Mo.App.1969).

■ Appellant submits that it was error to permit testimony as to respondent's poor financial condition; to allow comment on the fact that respondent had reached its full bonding limit; to allow respondent's counsel to prey on jury sympathy in his closing argument; and, to limit cross-examination of certain witnesses. There was evidence that appellant opened

up the matter of respondent's finances and bonding capacity and is not, therefore, in a position to make complaint about such testimony. Sigman v. Kopp, 378 S.W.2d 544, 547 (Mo.1964). The regulation of arguments of counsel and extent of cross-examination are matters entrusted to the trial court's discretion. Beesley v. Howe, 478 S.W.2d 649 (Mo.1972); State v. Stanley, 494 S.W.2d 682 (Mo.App.1973). We find no prejudicial abuse of that discretion in this case.

Finally, appellant asserts that the jury should have been given an instruction as to the definition of "value" as contained in MAI No. 16.02 and a further instruction submitting the issue of whether there was in fact a taking of Madison Street. Neither instruction is necessary, as MAI 16.02 provides for a definition of fair market value which has previously been found to be inapplicable, and the word "value" is not so highly technical as is the term "fair market value" and thus does not require definition. The issue of the taking of Madison Street by appellant was uncontroverted as there was an admission on appellant's part that they did in fact anchor an overpass onto Madison Street and through their own construction company, pursuant to orders from appellant, did grade Madison Street. No instruction covering the taking of Madison Street was necessary.

The judgment is affirmed.

SMITH, P. J., and SIMEONE and KELLY, JJ., concur.