FRONTIER AIRLINES, INC., et al.,
Appellants (Plaintiffs),

v.

The STATE TAX COMMISSION of Missouri et al., Respondents (Defendants).

Nos. 58677—58682, 58719, 58720, 58723, 58736 and 58752.

Supreme Court of Missouri, En Banc.

Sept. 8, 1975.

Rehearing Denied Oct. 13, 1975.

See also, Mo.Sup., 528 S.W.2d 952.

Stinson, Mag, Thomson, McEvers & Fizzell, by Dick H. Woods, George E. Gibson, George E. Feldmiller, Kansas City, for Trans World Airlines, Inc., Eastern Airlines, Inc., Frontier Airlines, Inc., Allegheny Airlines, Inc., Braniff Airways, Inc., American Airlines, Inc., Delta Air Lines, Inc. and Host International, Inc.

Neale, Newman, Bradshaw & Freeman, by Paul L. Bradshaw, Thomas G. Field, Springfield, for Ozark Air Lines, Inc.

Jack L. Koehr, City Counselor, by James J. Wilson, Associate City Counselor, St. Louis, for City of St. Louis.

Thomas W. Wehrle, County Counselor, Clayton, for respondents, St. Louis County, Missouri, E. J. Pung, Director of Revenue, Frank J. Antonio, Assessor.

John C. Danforth, Atty. Gen., Walter Nowotny, Jefferson City, for respondent, State Tax Commission of Missouri.

Boyle, Priest, Elliott & Weakley, Howard Elliott, Edward D. Weakley, St. Louis, for respondent, Berkeley School District.

HOLMAN, Judge.

This proceeding involves separate appeals by the eight airlines named in the caption, Host International, Inc., and the City of St. Louis. The appeals were ordered consolidated by this court. They were jointly briefed and argued and will all be disposed of in this opinion. The appellants seek a review of real estate assessments for the year 1968 by the St. Louis County Assessor as affirmed by the County Board of Equalization, the State Tax Commission and the St. Louis County Circuit Court. The controversy relates to the proper method of valuation and assessment in respect to "leasehold interests" or "possessory interests" of portions of Lambert-St. Louis Municipal Airport occupied by the airlines and Host. The airport is located in St. Louis County and owned and operated by the City of St. Louis. While no tax was assessed against St. Louis City it has opposed the assessments against its lessees apparently on the theory that the added expense to its tenants would adversely affect the amount of rental they would pay the City in the future. We have appellate jurisdiction because construction of the revenue laws of this state is involved. Art. V., Sec. 3, Mo. Const.

In connection with our statement of the evidence it should be mentioned that considerable evidence was offered before the Commission to which an objection was sustained but the evidence was nevertheless heard under the provisions of Section 536.-070(7) V.A.M.S. We have considered such of that evidence as we deemed to be admissible.

The airport property embraced an area of approximately 1,700 acres and was improved with runways, taxiways, aprons, instrument landing and communication facilities and a terminal building with concourses, parking lots, cargo hangar, and office buildings.

On January 1, 1968, each of the airlines, as well as Host, occupied and paid rent on certain space in the terminal building for which they had the right of exclusive use. In addition, each airline was allocated and charged rent upon space denominated "nonexclusive space" which it was deemed to use in common with other airlines and tenants in the terminal building. As of January 1, 1968, the airlines' use of both exclusive and nonexclusive terminal and concourse space was not the subject of formal lease agreements between them and the city; those leases had expired in 1965. As a result of negotiations between the airlines and the city commencing in the spring of 1965, formal lease agreements had been executed and submitted to the city in December, 1967. Those leases, which were for a term of 10 years commencing August 1, 1965, did not become finally binding until December, 1968, when they were approved by the St. Louis City Council. It had been agreed, however, at the time negotiations began that the lease provisions and rental rates finally agreed upon would be retroactive to August 1, 1965. The rental rates paid by the airlines on both exclusive and nonexclusive space in the main terminal were as follows: Upper level, $9.00 per square foot; middle level, $6.50 per square foot; lower level, $5.50 per square foot; operating area, $3.00 per square foot; concourses, $4.00 per square foot.

On January 1, 1968, Host was occupying almost 32,000 square feet of space in the terminal building. This was under a concession agreement, dated January 31, 1967, under which Host was obligated to pay as rental for such space a percentage of gross annual sales on food and alcoholic beverages.

Under a separate lease, Ozark occupied an office building and hangar complex on a 10 acre site situated in the airport area. In 1968, the lease on these buildings had a remaining period of 24 years together with options for 12 and 10 year extensions. This lease was subject to cancellation by the city upon 12 months notice when, in the city's opinion, the facilities were needed for an airport use of higher priority.

On May 31, 1968, the assessor advised the airlines and Host concerning the amount of their assessments. The amount of the assessments on the space leased totaled approximately $3,000,000. In addition to that the assessor attributed to each one of them a proportionate part of a 72 acre tract called the "campus area." A value of $1,300,000 was placed upon this campus area which, as stated, was allocated proportionately to the airlines and Host.

The formula or method used by the assessor in arriving at the foregoing valuations was obtained by him from John L. Vaughn, Jr., of Los Angeles, California, an expert in the field of real estate appraisals. On the other hand, the appellants relied upon the testimony of Walter R. Kuehnle, of Chicago, Illinois, an expert with 47 years experience in appraising real estate and interests therein. These two experts used widely differing methods in arriving at their opinions concerning the valuation of the interests here involved.

Mr. Kuehnle stated that in appraising a leasehold interest of a tenant the proper method is to determine the value of the property, the economic or rental value thereof, and the contract rental of the property as well as the length of the term of the lease and other provisions thereof which are the obligation of the lessee. He stated that "It's a method accepted by appraisers everywhere. I know of no other way you could do it." He further stated that by the use of this method one could determine the present value of any bonus to the lessee by the terms of the lease; that if the contractual rental was less than the fair market rental the leasehold would have a value. This method was illustrated by a simple example, as follows: If a store building being rented for $250 a month is worth $500 a month the value of the interest would be the present worth of the bonus for the remaining term of the lease. On the other hand, if the lessee was paying $750 a month for a store worth $500 a month the lease would, of course, have a negative value.

Mr. Kuehnle and his staff made an investigation of the airport properties and concluded that each of the airlines and Host were paying more than the full rental value of the areas leased by them and hence there was no bonus and the leaseholds were of no value. In arriving at the fair rental value of the space occupied by appellants, this witness not only considered the depreciated replacement value of the buildings but compared the premises with a number of other comparable airports in this country.

He further stated that California was the only state in which "possessory interests" somewhat like that used by the assessor is recognized. He also stated that the method used by the assessor resulted in a valuation of the real estate interest leased and not the leasehold interest.

Frank J. Antonio testified that on the relevant dates he was the assessor of St. Louis County; that he and his staff collected the information necessary to make the valuations in question; that they relied on the advice of John L. Vaughn, Jr. in applying the "possessory interest" method of assessing these leaseholds. He defined possessory interest as representing the beneficial use of real estate by a tenant where the real estate is exempt by law from taxation as against the owner. Mr. Antonio further stated that in applying the method used in

making the assessments he ignored the amount of rental paid by the lessee and the term that the lease would run; that he "had to in order to establish a uniform method of assessment"; that this method is applied only to tax exempt property.

The method used by the assessor is apparently new and novel. It has been formulated in an endeavor to obtain tax revenue from tax exempt real estate which, of course, must be obtained, if at all, from the tenants. We will attempt to outline this method as we understand it from reading the testimony of Mr. Antonio and Mr. Vaughn, as follows: (1) As indicated, the terms of the leases are disregarded and the assessor assumed an occupancy of 15 years for each tenant, (2) In order to obtain the estimated depreciated value of the buildings as of 1–1–68 he figured the trended replacement cost of the buildings as of 1–1–68 and depreciated it at a rate of 4% per year, (3) Using the assumed 15 year occupancy he estimated the depreciated value of the buildings on 1–1–83. The result is said to be the value of the city's "right of reversion" on that date, (4) He next calculated the present worth of the 1–1–83 depreciated value of the buildings using a 6½% compound interest factor, (5) The present worth of the reversion (as obtained in the preceding step) is subtracted from the estimated 1–1–68 depreciated value of the buildings and the result is said to be the value of the tenant's possessory interest in the building, (6) In regard to the 72 acre "campus area," which was valued at $1,300,000, he calculated the present worth of the city's reversionary right to the land in 15 years using a 6½% compound discount factor of .3888. The product thus obtained was subtracted from $1,300,000, the present value, and the result was the value of the tenant's "possessory interest" in the campus area, (7) The total of the value of the possessory interest in the buildings (step 5) and of the campus area (step 6) is then taken as the true value for assessment purposes and allocated to the airlines and Host in proportion to the percentage of total space occupied by each tenant on 1–1–68.

It should perhaps be mentioned at this point that complaint is made by respondents that the assessor requested copies of the leases and other information which was not furnished by some of the appellants and hence the assessor was forced to adopt a method such as outlined above in order to assess the interests. There is no merit in that suggestion. We have concluded from the record that the tenants reasonably complied with the assessor's request. That, however, is irrelevant because it is clear from the assessor's testimony that he would not have used the amount of rental. and length of term of the leases in any event.

The Commission made findings of fact and conclusions of law, ten pages in length. We deem it unnecessary to recite these in detail. Generally, it may be said that they were in accord with the contentions of respondents and contrary to those of the airlines and Host. It was specifically found that the method of assessment suggested by Mr. Vaughn was a "fair, reasonable, orderly, and appropriate plan of valuation"; that the opinion and testimony of Mr. Kuehnle was "not credible and without probative force."

"In our review of the orders of the State Tax Commission we . . . have in mind that we are not permitted to substitute our discretion for discretion legally vested in the Commission and should not set aside its findings unless such are 'unsupported by competent and substantial evidence upon the whole record'; or are 'for any other reason, unauthorized by law'; or are 'arbitrary, capricious or unreasonable'; or that they involve 'an abuse of discretion.'" *Stein v. State Tax Commission,* 379 S.W.2d 495 (Mo.1964).

We state at the outset of our consideration of this appeal that there is no controversy about the fact that this real estate, owned by the City of St. Louis, is exempt from taxation. Art. X, Sec. 6, Mo.Const. and Section 137.100(2), V.A.M.S. There

also seems to be no question but that leaseholds in city owned real estate are taxable if they have any value. *Iron County v. State Tax Commission,* 437 S.W.2d 665[3] (Mo.1968).

We agree with the contention of appellants that the assessor's valuations of their leasehold interests were arrived at by an erroneous method which directly conflicted with a method approved by decisions of this court. In *Land Clearance for Redevelop. Corp. v. Doernhoefer,* 389 S.W.2d 780, 784 (Mo.1965) this court stated that: ". . . the value of the leasehold should be determined from the testimony of qualified expert witnesses as that value which a buyer under no compulsion to purchase the tenancy would pay to a seller under no compulsion to sell, taking into consideration the period of the lease yet to run, including the unexercised right of renewal, the favorable and unfavorable factors of the leasehold estate, the location, type and construction of the building, the business of the tenant, comparable properties in similar neighborhoods, present market conditions and future market trends, and all other material factors that would enter into the determination of the reasonable market value of the property. The bonus value, sometimes referred to as the leasehold savings or profit, is the difference between the economic rental and the contract rental. The economic rental is the actual market value of the use and occupancy." In *United States v. Petty Motor Co.,* 327 U.S. 372, 381, 66 S.Ct. 596, 90 L.Ed. 729 (1945) the court stated: "The measure of damages is the difference between the value of the use and occupancy of the leasehold for the remainder of the tenant's term, plus the value of the right to renew in the lease of Petty, less the agreed rent which the tenant would pay for such use and occupancy." See also, *Stephen & Stephen Properties, Inc. v. State Tax Commission,* 499 S.W.2d 798 (Mo.1973).

In *St. Louis County v. State Tax Commission,* 406 S.W.2d 644 (Mo.1966), (a case involving substantially the same parties and issues as the one before us) we approved the *Doernhoefer* decision and held that the formula testified to by Witness *Randall* was in accord with the approved method. The *Randall* formula is very similar to that testified to by appellants' expert in the case at bar. Moreover, in this prior case we expressly disapproved of a method of valuation which assumed a longer term of tenancy than the remaining life of the leases. In the case under review the Commission approved a method of valuation that assumed a 15 year tenancy which assumption squarely conflicts with our prior holding.

It is our view that there is no valid basis in law or fact for support of the method used by the assessor. As heretofore stated it disregards elements which this court has held essential in the valuation of a leasehold. Moreover, we think the practical result of the use of that method is to value a substantial portion of the real estate rather than the leasehold, which, of course, is improper and unlawful. We think one illustration of that result is shown by an old building which the assessor concluded did not have a remaining economic life of 15 years on which he assessed the entire depreciated value on 1–1–68 against the lessee. It is also interesting to note that no case has been cited in which this method has been used or approved. There is some suggestion that a similar method was approved in *De Luz Homes, Inc. v. County of San Diego,* 45 Cal.2d 546, 290 P.2d 544 (1955) but that case approved a different method and the factual situation is so entirely different that the case has no application to the issue before us.

The respondents seek to justify the method used by the assessor by saying that this is special use property to which the usual rules do not apply. They say there is no market for the transfer of these leases and that it is proper to assume a period of occupancy beyond the lease term because these lessees will remain in the premises for an indefinite period regardless of the lease provisions. This contention would clearly not apply to Host. While it may be likely that most of the airlines will

continue to remain tenants in this airport we cannot approve such a speculative assumption for assessing tax valuations. We judicially know that the municipal airport in Kansas City was abandoned for major airline use a few years ago and a new airport constructed. It is also well known that there has been serious consideration for years to the establishment of another airport for the St. Louis area. Moreover, any one of the airlines might decide at any time to discontinue service to the St. Louis area. As indicated, this contention is disallowed.

In summary, we hold that the method or formula used by the assessor is an improper method of valuation unauthorized by law and that its approval by the State Tax Commission was arbitrary and unreasonable. We approve of the method of valuation outlined in our prior cases and testified to by Mr. Kuehnle.

 Since there will be further consideration of these cases by the Commission there are two other contentions which should be briefly considered. Appellants complain that the Commission erred in excluding their evidence regarding rents paid at other comparable airports for space similar to that occupied by them. It is our view that such evidence was admissible. Complaint is also made that it was arbitrary and unlawful for the assessor to allocate to the appellants the value of the "campus area" which included land adjacent to the buildings in question. Respondents have not cited any authority to support that action. We are unable to see any valid basis for charging appellants with the value of land they did not lease or pay rent on and which is used by the air travel public generally.

The judgments in these cases are reversed and the causes are remanded to the trial court with directions that it reverse its judgments of affirmance and remand the cases to the State Tax Commission for further proceedings not inconsistent with this opinion.

BARDGETT, HENLEY and DONNELLY, JJ., concur.

MORGAN, J., dissents in separate dissenting opinion filed.

FINCH, J., dissents in separate dissenting opinion filed.

SEILER, C. J., dissents and concurs in separate dissenting opinion of FINCH, J.

MORGAN, Judge (dissenting).

I respectfully dissent.

The property sought to be taxed in this instance is owned by the City of St. Louis. Section 6 of Article 10 of the 1945 Constitution of Missouri provides, in part: "All property, real and personal, of the state, counties and other political subdivisions . . . shall be exempt from taxation . . ." No exceptions are provided therein. Such exemption applies to the same in its entirety; and, any effort to tax some portion thereof carved from the fee is, in my opinion, violative of the constitutional exemption established by the citizens of this state. Cases wherein this court has found otherwise should no longer be followed.

The tax exemption is that of the City of St. Louis in the public use of the property for a municipal airport. The right to rentals for the use of a portion thereof belongs to the municipality; and common sense dictates that the City of St. Louis, in fact, is paying any tax levied by St. Louis County because the tax on a tenant necessarily must be accounted for in setting the amount of rental. For instance, if the reasonable rental is $100. per month and the county tax amounts to $10. a month, the rental available will be $90. and for all practical purposes the city pays the county tax.

The suggestion is not novel. As said in 71 Am.Jur.2d § 200, State and Local Taxation, at p. 519:

"With respect to the taxation by a municipal corporation of the property of another municipal corporation of the same

state located within the boundaries of the former, it is the majority rule that such property is exempt from such taxation, if it would be exempt if located within its own territorial boundaries, in the absence of any provision to the contrary. In many instances, the exemption from taxation is expressed by constitutional provision or by statute. The rule is sometimes stated with the qualification that property taken or held for a public use by one municipality within the territorial limits of another, or within its own boundaries, is not subject to taxation so long as it is actually devoted to a public use. The reason is that property held and used for the benefit of the public ought not to be made to share the burden of paying the public expenses. That exemption does not rest on any provision of statute, but is founded on general principles of expediency and justice. Correspondingly, it has been held on the other hand, that exemption from taxation, in view of the principle on which it rests, cannot justly be extended to property owned by one municipality within the bounds of another, not actually devoted to a public use or held with the design within a reasonable time to devote it to such use."

In an annotation entitled "Property of one municipality within territorial limits of another as subject to taxation by latter" in 81 A.L.R. at p. 1520, it is said:

"And it may be stated as a general rule, deduced from the holdings and inferences of the courts in the decisions herein cited, that the property of one municipality located in another in the same state is exempt from taxation, if it would be exempt if located within its own territorial boundaries, unless express legislation has changed the rule."

Consistent therewith is the supplemental annotation in 99 A.L.R. at p. 1144.

How are such taxes to be collected if not paid? Section 140.640 prohibits a personal money judgment against a tenant for un-

paid taxes. The property taxed is charged with any delinquency to be followed by foreclosure. Would be purchasers, if any, would thus be forced on the city as tenants in its property whether desirable or not. It would logically follow that the city, contrary to its constitutional exemption, would have to discharge the lien of such taxes to maintain proper control over its facility.

An airport is a unique property, with a singular reason for its existence. If prior decisions, contrary to the suggestion here made, and applicable to industrial development situations are to remain as the law of this state, it should be declared that they do not apply to a city airport.

FINCH, Judge (dissenting).

I respectfully dissent.

As the principal opinion notes, there is no question but that property owned by a city is exempt from taxation. Art. X, § 6, Mo. Const. However, leaseholds or possessory interests therein owned by tenants not possessing a tax exempt status are taxable. *Iron County v. State Tax Commission,* 437 S.W.2d 665 (Mo.1968). In this case appellants are tenants (of the City of St. Louis) which do not have a tax exempt status. Hence, the issue presented is not whether their possessory interests in the airport property are subject to assessment and taxation but rather whether the assessments as made by the assessor and approved by the State Tax Commission are to be sustained as representing the "true value in money" of the interest of appellants as required by § 137.115.[1]

Relying principally on *Land Clearance for Redevelopment Corp. v. Doernhoefer,* 389 S.W.2d 780 (Mo.1965) and *St. Louis County v. State Tax Commission,* 406 S.W.2d 644 (Mo.1966), the principal opinion reverses the judgments of the circuit court which in turn had affirmed the action of the State Tax Commission in upholding the assessments by the assessor. In so holding the principal opinion concludes that the assessor's valua-

1. All statutory references are to RSMo 1969 unless otherwise indicated.

tions of appellants' interests were arrived at by a method which conflicted with that approved previously in *Doernhoefer* and in *St. Louis County* and that the Commission's action in approving such appraisals was arbitrary and unreasonable. The opinion specifically ratifies the method of evaluation previously approved by this court in the *Doernhoefer* and *St. Louis County* cases and remands the case for proceedings by the Tax Commission consistent therein.

*Doernhoefer* was a case involving the allocation of a condemnation award between the fee owners of the property and their tenant. The property involved was a three-story building located at Sixth and Pine streets in St. Louis with the tenant occupying the lower portion thereof as a pawn shop. The lower court made an award to the tenant from the condemnation judgment on the basis of what was referred to as the bonus value of its lease. This particular lease had 7½ years to run with an option to renew for ten years and the court, based on testimony, determined the difference between the contract rental on the property and the economic rental thereon and granted the difference between the two for the remainder of the lease and option periods. In approving that formula, this court said, 389 S.W.2d at 784:

" * * * [T]he value of the leasehold should be determined from the testimony of qualified expert witnesses as that value which a buyer under no compulsion to purchase the tenancy would pay to a seller under no compulsion to sell, taking into consideration the period of the lease yet to run, including the unexercised right of renewal, the favorable and unfavorable factors of the leasehold estate, the location, type and construction of the building, the business of the tenant, comparable properties in similar neighborhoods, present market conditions and future market trends, and all other material factors that would enter into the determination of the reasonable market value of the property."

I am of the opinion that *Doernhoefer* does not govern the instant case. In the first place, it dealt with apportionment of a condemnation award between the landlord and tenant, not with administrative review of the method and amount of an assessment of property for tax purposes made by a county assessor. Secondly, and even more importantly, it involved a commercial building located in the City of St. Louis in which space would have been suitable for numerous uses and purposes. It was possible, by means of testimony as to rentals of similar property, to determine the actual market value of use and occupancy in the property in question compared with the contract rental which the tenant paid, thereby arriving at a valuation of the leasehold interest based on the so-called bonus value formula. The instant case does not involve that kind of generally useable property. Rather, we deal with leasehold or possessory interests in a special or limited purpose property. The airport terminal and associated properties are designed and built for the purpose of handling aircraft passengers and cargo. Only certificated air carriers are interested in or could utilize such space. Carriers certificated to serve Lambert-St. Louis Municipal Airport already occupied quarters in the airport building. Absent certification of additional carriers, there are no other companies which would be prospective purchasers of these leasehold or possessory interests. These leases are not ones bought and sold on an open market and hence do not have a market value readily ascertained on the basis of such a market. Consequently, the bonus method of determining value on the basis of what a willing but unobligated seller and a willing but unobligated buyer would agree upon for leasing such airport space is not a very realistic method for determining the value of appellant's leasehold or possessory interests. Most certainly, it does not represent the only method which could be utilized to determine the "true value in money" of these leasehold or possessory interests in Lambert-St. Louis airport property.

This court, in several condemnation cases, has recognized that it is not always possible to determine the fair market value of property on the usual willing but unobligated buyer and willing but unobligated seller formula, and that other methods to determine value must be utilized in such situations. One such instance was in *City of St. Louis v. Union Quarry & Construction Co.*, 394 S.W.2d 300 (Mo.1965), wherein the court recognized that an abandoned rock quarry used as a dump was a unique property in which a different method of determination of value which included capitalization of income was proper.

Another such case was *State ex rel. State Highway Commission v. Mount Moriah Cemetery Association*, 434 S.W.2d 470 (Mo. 1968), wherein the State Highway Commission was condemning part of a cemetery tract. This court recognized that cemeteries were special purpose properties which are not usually bought and sold on the market. As a consequence, the court held that an instruction which told the jury to base its award upon fair market value arrived at by the usual willing but unobligated seller and willing but unobligated buyer test should not have been given and that a new trial was required. In so holding this court quoted with approval from *Graceland Park Cemetery Co. v. City of Omaha*, 173 Neb. 608, 114 N.W.2d 29, 31, as follows:

"There are types of property that are not bought and sold on an open market and consequently do not have a reasonable market value within the rule that the fair market value is the price which property will bring when offered by a willing seller to a willing buyer, neither being obligated to buy or sell. The fair market value of property implies proof of sales of similar property in the community as a means of fixing the value of the property taken. When the property is such that evidence of fair market value is not obtainable, necessarily some other formula for fixing the fair value of the property must be devised. This is true, as we view it, of such properties as school yards, church yards, college campuses, buildings under construction, and cemeteries. [Citation] We hold, therefore, that in the taking of land used for cemetery purposes the measure of damages is not the fair market value of the land for the simple reason that such property has no fair market value."

The court in *Mount Moriah* approved utilization of evidence of capitalization of income in the determination of value of the property being taken. See also *Reorganized School District No. 2 v. Missouri Pacific Railroad Co.*, 503 S.W.2d 153 (Mo.App. 1973).

Neither is *St. Louis County* dispositive of this appeal. In that case the county assessor made assessments for 1963 covering the leasehold interests of seven airlines in parts of Lambert-St. Louis Municipal Airport. On appeal, the State Tax Commission, after hearing evidence, found that the assessor had used an incorrect formula in making his assessment and that under the evidence which it heard, the contractual rent was greater than the fair market value resulting in the assessment being "zero or no value." The circuit court on petition for review reversed the decision of the Tax Commission and reinstated the evaluation and assessment made by the county assessor. However, on appeal to this court, we held that the decision by the Commission as to values of the leasehold interests of the airlines was supported by competent and substantial evidence upon the whole record and should be sustained. Accordingly, pursuant to the type of judicial review called for by § 536.140(2), the judgment of the circuit court was reversed and remanded with directions to enter a judgment affirming the decision of the Tax Commission.

In contrast, the Tax Commission in this case *affirmed* the assessment made by the county assessor. The Commission made extensive findings of fact and conclusions of law in reaching that conclusion. Included therein were findings that the testimony of witnesses offered in support of the assessment by the assessor were fair, reasonable

and accurate and that the testimony of the witness who testified for the airlines as to value of their leasehold interests was not credible.

The principal opinion reverses on the basis that the action of the Tax Commission in approving the assessment made by the assessor utilized an unapproved and impermissible formula and that in so doing its action was arbitrary and unreasonable. I cannot concur in that conclusion. *St. Louis County* did not hold that the bonus method of valuation is the only method useable in appraising possessory interests in tax exempt real estate. Missouri cases, as previously indicated, do not limit determination of market or true value to utilization of what a willing but unobligated buyer and a willing but unobligated seller would agree upon when special purpose property or property as to which there is no market is involved. In such instances some other method of determining value can and will be approved. In *Union Quarry* and in *Mount Moriah*, a formula which included capitalization of income was approved. In *Reorganized School District No. 2*, the court approved utilization of cost of replacement less depreciation. In this case the Tax Commission found that while at the date of assessment some of the tenants had no leases and were in the process of renegotiating leases, history disclosed that the airline tenants enjoyed continuous and continuing possession in the specially designed and dedicated premises and that they would continue to occupy the premises on a quasi-permanent basis, subject to adjustment at intervals which would not materially affect the beneficial use and enjoyment of the interests possessed. That was a reasonable conclusion, given the fact that they have occupied the terminal over the years and, unless and until changes in carriers certificated are made, are the only prospects for use of these airport facilities.

The principal opinion specifically approves the bonus formula as the required method for valuing these airport leasehold or possessory interests and in effect directs that on remand the assessments be determined on that basis. Necessarily, such a conclusion must be premised on the assumption that such a formula will accurately portray the "true value in money" of these interests and is, in fact, the only method which will accomplish that purpose. I cannot agree that such a conclusion is correct. In my judgment it is not realistic to say that the possessory interests in Lambert-St. Louis Municipal Airport have no "true value in money." They do have. They are of substantial value to these appellants. Without them, appellants could not serve the air traveling public in St. Louis because there is no other property which they could lease and utilize for this unique purpose. The unique character of the property involved requires, for the reasons herein enumerated, the recognition, as in *Union Quarry, Mount Moriah* and *Reorganized School District No. 2*, that another method of determining value must be utilized. Accordingly, I dissent.