

# Missouri Court of Appeals

## Southern District

### In Division

RICK PARKER, Assessor Reynolds County, Missouri,

        Appellant,

vs.

THE DOE RUN RESOURCES CORPORATION,

        Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)

No. SD38539

FILED: January 30, 2025

### APPEAL FROM THE CIRCUIT COURT OF REYNOLDS COUNTY

Honorable John D. Beger, Judge

## **AFFIRMED**

The issue presented by this appeal is whether the State Tax Commission (the "STC") misapplied the opinion by our high court, ***Frontier Airlines, Inc. v. State Tax Comm'n***, 528 S.W.2d 943 (Mo. banc 1975), in assessing a leasehold interest The Doe Run Resources Corporation ("Doe Run") maintains in certain real estate owned by the United States Bureau of Land Management (the "BLM"). Rick Parker, the Assessor for Reynolds County ("Assessor"), appeals from the circuit court's judgment affirming the STC's decision and order in question. Finding no error as alleged, we affirm.

## Applicable Law and Principles of Review

We review the action of the agency—here, the STC—rather than the circuit court's judgment. ***Crown Diversified Indus. Corp. v. Zimmerman***, 683 S.W.3d 273, 279 (Mo. banc 2024). "When, as in this case, the agency's final decision incorporates the hearing officer's decision, the decisions are reviewed together." ***Id.*** "This Court determines whether the STC's decision and order is 'authorized by law' and 'supported by competent and substantial evidence upon the whole record.'" ***Id.*** (quoting MO. CONST. art. V, sec. 18). "This Court defers to the STC's factual findings and reviews the agency's legal conclusions *de novo*." ***Id.***

Here, the parties' dispute concerns the property tax assessment of Doe Run's leasehold interest in the BLM property. It is required that "[e]very person owning or holding real property or tangible personal property on the first day of January, including all such property purchased on that day, shall be liable for taxes thereon during the same calendar year." Section 137.075.[1] To calculate these taxes, county assessors "shall annually assess all real property, including any new construction and improvements to real property, *and possessory interests in real property* . . . ." Section 137.115.1 (emphasis added). "The term 'possessory interests' includes leaseholds." ***St. Charles Cnty. v. Curators of Univ. of Mo.***, 25 S.W.3d 159, 161 (Mo. banc 2000).

"The assessed valuation of property is its true value in money." ***Aspenhof Corp. v. State Tax Comm'n***, 789 S.W.2d 867, 869 (Mo.App. 1990). "Determining the true value in money is an issue of fact for the STC." ***Cohen v. Bushmeyer***, 251 S.W.3d 345, 348 (Mo.App. 2008). However, "[t]o the extent the Decision and Order was based on the

---

[1] All statutory references are to RSMo 2016, as updated through RSMo Cum.Supp. (2018).

[STC]'s interpretation and application of the law, we review the [STC]'s conclusions of law and its decision *de novo,* and we make corrections to erroneous interpretations of the law." ***Union Elec. Co. v. Estes***, 534 S.W.3d 352, 365 (Mo.App. 2017) (internal quotation marks omitted). Our review here, therefore, is *de novo* as Assessor only challenges the STC's conclusion that ***Frontier*** mandates a particular approach to valuation under the facts of this case.[2]

## The *Frontier* Decision

Having determined the nature of our review, we next turn to and summarize the case at issue relied on by the STC. ***Frontier*** involved a multimillion-dollar assessment for tax year 1968 of certain property—leased by several airlines and a food and drink provider—located at what was then known as Lambert–St. Louis Municipal Airport, owned and operated by the City of St. Louis. 528 S.W.2d at 944-45. The dispute between these taxpayers and the assessor (among other parties) was the use by their respective experts of "widely differing methods in arriving at their opinions concerning the valuation of the interests here involved." *Id.* at 945. The taxpayers' expert stated with respect to leaseholds, "the proper method is to determine the value of the property, the economic or rental value thereof, and the contract rental of the property as well as the length of the term of the lease and other provisions thereof which are the obligation of the lessee." *Id.* "He

---

[2] Doe Run argues that "[b]ecause Assessor only takes issue with the valuation method used, this Court must defer to the STC's findings." In support of this proposition, Doe Run quotes ***Crown Diversified Indus. Corp.*** for the principle that "the proper methods for valuing and assessing property are delegated to the STC[.]" 683 S.W.3d at 284. However, "[w]hether the appropriate standard of value and approach to valuation were properly applied under the particular facts and circumstances of the case is a question of law." ***Snider v. Casino Aztar/Aztar Mo. Gaming Corp.***, 156 S.W.3d 341, 346 (Mo. banc 2005). Thus, while the STC has "some discretion" in deciding amongst valuation approaches, "its choice of valuation approaches must comply with the law, and once the [STC] decides to use a particular approach, *it must apply that approach properly* and consider all of the relevant factors." ***Parker v. Doe Run Co.***, 553 S.W.3d 356, 361 (Mo.App. 2018) (emphasis added). As Assessor makes clear in its reply brief, "[t]he validity of [the STC's] reading [of ***Frontier***] is the question of law posed here." Accordingly, our review is *de novo*.

3

further stated that by the use of this method one could determine the present value of any bonus to the lessee by the terms of the lease; that if the contractual rental was less than the fair market rental the leasehold would have a value." *Id.* According to this expert, the taxpayers "were paying more than the full rental value of the areas leased by them and hence there was no bonus and the leaseholds were of no value." *Id.*

In contrast, the assessor's expert in *Frontier* utilized "the 'possessory interest' method of assessing these leaseholds[,]" defined "as representing the beneficial use of real estate by a tenant where the real estate is exempt by law from taxation as against the owner." *Id.* This method "ignored the amount of rental paid by the lessee and the term that the lease would run" and instead attempted to quantify the interest taxpayers' had in certain airport buildings and areas. *Id.* at 946. The method was "formulated in an endeavor to obtain tax revenue from tax exempt real estate which, of course, must be obtained, if at all, from the tenants." *Id.*

In its analysis of these methods, our high court initially observed that there is "no controversy about the fact that this real estate, owned by the City of St. Louis, is exempt from taxation." *Id.* Additionally, there was no question "that leaseholds in city owned real estate are taxable if they have any value." *Id.* at 947.

As to the leasehold at issue, our high court concluded, "[w]e agree with the contention of appellants that the assessor's valuations of their leasehold interests were arrived at by an erroneous method which directly conflicted with a method approved by decisions of this court." *Id.* To wit:

> [T]he value of the leasehold should be determined from the testimony of
> qualified expert witnesses as that value which a buyer under no compulsion
> to purchase the tenancy would pay to a seller under no compulsion to sell,
> taking into consideration the period of the lease yet to run, including the

4

unexercised right of renewal, the favorable and unfavorable factors of the leasehold estate, the location, type and construction of the building, the business of the tenant, comparable properties in similar neighborhoods, present market conditions and future market trends, and all other material factors that would enter into the determination of the reasonable market value of the property. The bonus value, sometimes referred to as the leasehold savings or profit, is the difference between the economic rental and the contract rental.

*Id.* (quoting *Land Clearance for Redevelopment Corp. v. Doernhoefer*, 389 S.W.2d 780, 784 (Mo. 1965) (internal quotation marks omitted). Our high court further observed and stated:

It is our view that there is no valid basis in law or fact for support of the method used by the assessor. As heretofore stated it disregards elements which this court has held essential in the valuation of a leasehold. Moreover, we think the practical result of the use of that method is to value a substantial portion of the real estate rather than the leasehold, which, of course, is improper and unlawful. We think one illustration of that result is shown by an old building which the assessor concluded did not have a remaining economic life of 15 years on which he assessed the entire depreciated value on [January 1, 1968,] against the lessee.

*Id.*

Ultimately, for all of the aforementioned and other reasons, our high court held "that the method or formula used by the assessor is an improper method of valuation unauthorized by law and that its approval by the [STC] was arbitrary and unreasonable." *Id.* at 948. Our high court affirmatively "approve[d] of the method of valuation outlined in our prior cases and testified to by [taxpayers' expert]." *Id.*

#### The STC's Decision and Order

With the aforementioned summary of *Frontier* in mind, we next turn to the STC's application thereof to the instant dispute. The relevant portions of the STC's decision and order concern the true value in money of Doe Run's mineral interests in certain real property as of January 1, 2019. Doe Run "is the fee owner of some mineral interests and

5

leases other mineral interests from private owners and the United States government, a tax-exempt entity, pursuant to leases administered by the [BLM]." All such "private and BLM leases grant [Doe Run] temporary possession of land in exchange for royalty payments to the owner[s]." Doe Run's royalty payments are based on net smelter returns, "which represent the net income from [Doe Run]'s sales of mineral concentrates."

For the assessment period at issue, Assessor claimed that the true value in money of Doe Run's mineral interests was $163,378,679 based upon "direct capitalization of the royalty income" (referred to elsewhere below as the "income approach" or "income-based royalty approach") across all of Doe Run's properties, either owned in fee or leased. In contrast, Doe Run claimed that the true value in money amounted only to $49,900,000. The difference in these figures amounted, in part, to Doe Run claiming that the BLM leases have no taxable "bonus value" and excluding them from its calculation. Excluding the BLM leases, Doe Run utilized the direct capitalization of royalty income approach to value all of the properties it owned in fee or leased from private parties.

The hearing officer (whose opinion the STC incorporated into its decision and order) observed that "[t]he income approach is the preferred method for valuing mineral interests for *ad valorem* taxation." The hearing officer concluded, however, citing **Frontier**, that "[a]lthough the income-based royalty approach is typically used to value mineral interests, Missouri law requires use of the bonus value method to value leasehold interests in tax-exempt property."[3] The hearing officer noted that bonus value is the difference between the economic rental price and the contract rental price and, utilizing

---

[3] The STC also cited **Avis Rent A Car Sys., Inc. v. State Tax Comm'n**, a decision by the western district of this Court, which, as to **Frontier**, merely observed that "the court **held** that a lease of tax exempt property does not have a value that can be assessed for ad valorem taxes unless the lease has a bonus value[.]" 716 S.W.2d 871, 875 (Mo.App. 1986).

this method, concluded that Doe Run's mineral interests in its BLM leases have no bonus value (resulting in the "true value in money" of those interests being $0) because the 5% amount Doe Run pays BLM in royalties "is analogous to rent and reflects the market rate."

### Discussion

In his sole point on appeal from the judgment of the circuit court affirming the STC's decision and order, Assessor contends:

> The [STC] erred in determining the "true value in money" of Doe Run's interest in ore reserves in Reynolds County acquired through mineral leases from the [BLM] using the "bonus value" method while valuing the ore reserves acquired through mineral leases from private landowners using the "typical" or "preferred" method because doing so is arbitrary, capricious, and unreasonable in that the rights that Doe Run has in ore reserves on private versus public land were not distinguished from those acquired from the [BLM] in any factual and legal sense that justifies or explains using different methods to establish their value.

As clarified by Assessor's supporting argument, the contentions in this point hinge upon the ***Frontier*** case being "distinguishable, not dispositive." We conclude, however, that ***Frontier*** controls.

As an initial matter, with regard to taxation, it is important to note that the BLM's real estate *is* materially distinguishable from real estate under private ownership: namely because the real estate is owned by the United States, it is tax exempt under the Missouri Constitution. *See* Mo. CONST. art. III, sec. 43 (stating that "[n]o tax shall be imposed on lands the property of the United States"). Thus, if "the practical result of the use of [the Assessor's] method is to value a substantial portion of the real estate rather than the leasehold," such a method would be, as our high court stated in ***Frontier***, "improper and unlawful." 528 S.W.2d at 947.

We note that Assessor attempts to draw a distinction between the BLM leases and the leases at issue in ***Frontier***. An extractive mineral lease, as Assessor explains, allows

7

the lessee to remove mineral ore from the property, process that ore, and sell the resulting product. Assessor observes that "[u]nlike mineral leases, Frontier Airlines was not allowed to remove a portion of the terminal building, take title to it, and use or sell that portion of the building (or the disaggregated materials from it) elsewhere."

This distinction, however, is not material. The assessor in *Frontier* also sought to quantify and assess "the beneficial use" by the taxpayers of tax-exempt real estate. *Id.* at 945. The theory, as such, was that the taxpayers could extract a benefit—an intangible one, but a benefit nevertheless—from the tax-exempt real estate there at issue. *See id.* at 945-46. However, the assessor's method valued a substantial portion of tax-exempt real estate rather than the leasehold therein and, therefore, was erroneous. *Id.* at 947. Here, Assessor fails to explain how or why this principle would not also apply to prohibit the valuation of tax-exempt real estate even if such real estate is subject to an extractive mineral lease.

We turn, then, to Assessor's valuation method. Assessor describes the income-based royalty approach—the method he advocates and contends is *not* contrary to *Frontier*—as quantifying "the potential profit" Doe Run may realize by way of its operations. Specifically, this method "value[s] the *entire* ore reserves" that Doe Run has the right to extract. Such a value is derived by calculating the "costs of production, cost of capital, and the price of the resulting product – here, mostly lead." According to Assessor, Doe Run "*could* remove all the mineable ore, leaving none for the landowner." (Emphasis added.) But on the other hand, as Assessor freely acknowledges, "it may be that at the end of the lease period there may be some mineable ore on a particular parcel (there's no way to know in advance which one)[.]" Stated another way—although Doe Run has an interest

8

in and a right to extract all of the mineable ore on the BLM real estate it leases, said ore remains the BLM's real estate up to and until Doe Run exercises said right. The practical result of the income-based royalty approach, therefore, if applied to the BLM leases, would be the valuation of a substantial portion of what then remains tax-exempt real estate—the raw and yet-to-be extracted ore reserves located thereon and therein—rather than the valuation of Doe Run's leasehold. *See Frontier*, 528 S.W.2d at 947. As such, we find no error by the STC in relying on *Frontier* to reject this method and to select, instead, the bonus value method to calculate the true value in money of the BLM leases. Point denied.

## Decision

The circuit court's judgment is affirmed.

BECKY J. WEST, J. – OPINION AUTHOR

JACK A. L. GOODMAN, J. – CONCURS

MATTHEW P. HAMNER, J. – CONCURS